INDIVIDUAL DRINKING CUP CO. et al. v. PUBLIC SERVICE CUP CO.

(District Court, E. D. New York. July 23, 1915.)

1. PATENTS ☞328—VALIDITY AND INFRINGEMENT—CUP DISPENSING APPARATUS.

The Luellen patent, No. 1,081,508, for a dispensing apparatus for delivering a cup or fluid container, *held* not anticipated, valid, and infringed.

2. PATENTS ☞95—AMENDMENT OF APPLICATION—EFFECT OF PRIOR ASSIGNMENT.

An applicant for a patent, although he has assigned his rights under the application, may still complete the taking out of the patent, and, if necessary, amend the claims within the scope of the specification.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 127; Dec. Dig. ☞95.]

3. PATENTS ⬤⟿328—VALIDITY AND INFRINGEMENT—SANITARY CUP.

The Luellen patent, No. 1,032,557, for a paper cup to be used in connection with a coin-controlled apparatus for dispensing beverages or similar purposes, *held* valid, but not infringed.

In Equity. Suit by the Individual Drinking Cup Company and Lawrence W. Luellen against the Public Service Cup Company. On final hearing. Decree for complainant in part.

Clifford E. Dunn, of New York City (Edmund Quincy Moses, of New York City, of counsel), for plaintiffs.

Albert H. Walker, of New York City, for defendant.

CHATFIELD, District Judge. [1] The present action is based upon two patents—one, No. 1,032,557, granted July 16, 1912, upon an application filed May 23, 1908, for a cup to be used in connection with coin-controlled apparatus for dispensing beverages, or for similar purposes. A dispensing apparatus was described in an application filed April 2, 1908, under No. 424,732. This application was subsequently divided, upon the 22d day of November, 1909, and upon the new application, No. 529,206, patent No. 1,081,508, covering an apparatus for delivering a cup or fluid container, was issued on the 16th of December, 1913. Claims 3, 4, 5, 7, 11, 12, 13, 14, 15, 16, 17, 18, 20, 22, 25, 26, 27, 28, 34, 35, 36, 37, 40, 41, 43, 44 to 54, inclusive, of this last patent, and both claims of patent 1,032,557, are alleged to be infringed.

The general purpose of such cups and devices, and the sudden appreciation on the part of the public of the dangers from the use of common drinking cups, in the next few years preceding the application for these patents, was gone into at length at the trial, to show the practicability and demand for such a device, and to explain the tremendous use which has followed the placing of such sanitary articles upon the market. It is not necessary to state this proof in detail, even though from the standpoint of information and personal interest it is of great importance.

The testimony shows that Lawrence W. Luellen, upon whose application the patents in suit were granted, acquired some knowledge of the possibility of communicating disease through the use of a common drinking cup, and appreciated the commercial utility of supplying a separate sanitary cup for each individual, when the public were made to understand the dangers of the old drinking cup. Luellen foresaw that the trend of public opinion and statute would work in two directions, viz., to abolish the old form of cup, and to require individual cups, under such circumstances that a machine, for supplying them, and a useful, cheap, and convenient form of cup, would be necessary.

Having these objects in mind, his first experiments were along the lines of a machine which would supply the cup with any liquid which was intended to be sold or furnished in one-glass quantities. Luellen coupled with the idea of this machine that of the automatic vending apparatus, which was then becoming widely known and used in va-

rious forms.   It is evident that a device for allowing the insertion of a coin and the releasing of a mechanism thereby was not patentable in general.   But the combination of the coin mechanism with a machine to vend or distribute cups might include patentable novelty, from the form of the device and the application of the coin mechanism.

Luellen's first application for a patent combined a container or holder for a stack of cups, a case (attached to the lower end of the holder, which was to be maintained in an upright position) containing a drum which could be revolved sufficiently to reverse the inverted cup and at the same time to release, from a tank, fluid sufficient to fill the glass or cup, and then, automatically shutting off the supply of liquid, allow the cup to place itself, under the influence of gravity, upon the shelf or platform, where it would be accessible to the user.

It was at once apparent that the coin mechanism, while a component element of a patentable combination, was not a necessary part of the device for merely delivering, in a clean and uncontaminated condition, one cup from the supply.   In the same way, it became evident that the mechanism for carrying a quantity of liquid into the cup and shutting off the supply before the mechanism should be restored to its original position was also a part of a patentable combination, but that it was not a necessary element in the furnishing of a single cup from the nest or store in the holder.

Earlier patents, such as Pierce, 494,346, granted March 28, 1893, taught that a container with cups in large quantities, and with a device for supplying one cup at a time, was a natural idea, in connection with water tanks or public drinking places, and that the patentability lay in the form of the device, while the commercial success depended upon the demand and adaptability to meet that demand satisfactorily.

Luellen, therefore, divided his original patent, and filed, upon the 22d of November, 1909 (using the same set of drawings as in his original application), a petition in which he sought a patent for claims covering merely the idea of an apparatus by which a single cup can be withdrawn from the stack held in the reservoir and delivered to the user by the rotation of the drum or delivery member, in the form in which those parts had been made a part of the general combination for the supplying of the beverage, and for the use of a coin to set the apparatus in operation.   Proposed claim 5, which was subsequently allowed as claim 2, was as follows (patent No. 1,081,508):

"2. An apparatus for dispensing flanged cups comprising a receiver for a series of said cups, and a delivery member provided with a withdrawing surface for engagement with one face of a cup flange and with a supporting surface for engagement with the opposite face of a flange."

This claim, while illustrative, is not alleged to be infringed in the present action.   But claim 15, subsequently granted under claim 16:

"15. The combination, with a cup receiver, of a movable delivery member provided with a cup recess, and means movable with the delivery member for drawing a cup from the receiver into the recess"

—is alleged to be infringed, and these claims show the extent or development of the patentable idea in the inventor's mind at the time of making his first application.

Luellen also filed an application on the 24th of August, 1908, which was granted upon the 11th of January, 1910, under No. 946,242, for a coin-controlling apparatus, showing the application thereof to that of his earlier and then pending application, and describing both in the drawings and specifications, the holder, the casing, the rotating drum, and the delivering or separating apparatus, by which the cup was drawn into the opening of the drum and there inverted for delivery to the customer, of the dispenser patent in suit.

Further development of the commercial use of the cups led to the designing of a simple and cheap container, which would still protect them from contamination, in the many buildings and places where no charge would be made and where the cups were desired to be available, one at a time, upon all occasions. Such places are dentists' offices, private factories, business houses, etc.

Luellen thereupon presented another application to the Patent Office, which was finally allowed, under No. 1,043,854, on November 12, 1912, with respect to claims covering the receiving chamber with retaining and supporting means at the delivery opening in the casing so proportioned relatively to the stack of cups as to allow one cup to project for withdrawal at any time. This patent has been held valid in the case of Individual Drinking Cup Co. v. United States Drinking Cup Co., 220 Fed. 331, decided in the District Court of the United States for the District of New Jersey, September, 1914. In a further action upon that same patent, brought by the Individual Drinking Cup Company against the Osmun-Cook Company ([D. C.] 220 Fed. 335), the assignments by Mr. Luellen, as patentee, to the Individual Drinking Cup Company, were attacked and considered by the court. The validity of these assignments was upheld; the court stating that the doctrine of Hildreth v. Auerbach (D. C.) 200 Fed. 972, and Wende v. Horine (C. C.) 191 Fed. 620, correctly expressed the law.

[2] In the present case, the same objections as to the validity of the assignments of the patents in suits have been raised and also questions based upon a contract and assignment of these patents in trust by Mr. Luellen prior to the assignments by means of which the Individual Drinking Cup Company was formed. But the record and exhibits show that the rights thus transferred were given back to Mr. Luellen for a valid consideration, and properly transferred by him for stock in the plaintiff company. The dates of these assignments all antedated the amendment by Mr. Luellen in the Patent Office, containing most of the 54 claims as finally allowed; but his assignment covered his patent application, and, while he was bound by the effect of the assignment, he could still complete the taking out of the patent.

It appears from the record that Mr. Luellen had several attorneys, and that his present attorney (Mr. Clifford E. Dunn) prosecuted and presented to the Patent Office many claims which were included in the patent as finally issued. Much of the discussion and evidence in this case have been based upon these claims. The defendant alleges that many of the claims were drawn solely for the purpose of enlarging the

specifications and earlier claims, so as to cover the defendant's device, which was already upon the market. It also alleges that Mr. Dunn changed the drawings and the form of the original application, so as to present a structure not conceived or indicated by the original Luellen application, and that these changes were suggested by the ideas presented in the defendant's machines.

It may be assumed that if the Luellen patent is invalid because it covers inventions not described in the original application, and if those inventions or claims were presented to the Patent Office after Luellen had executed the assignment of his rights, some question might also be raised as to what rights Luellen could have conveyed by the assignment. But this would be because of the invalidity of the patent, and not from any difficulty in the transferring in advance of allowance by the Patent Office of all such rights as the inventor might thereafter obtain.

The defendant has presented certain patents from the prior art in support of the defense of anticipation and invalidity. As has been stated, the Pierce patent, supra, showed the idea of furnishing drinking cups, one at a time, from a container holding a stack or nest of cups, each having the shape of an inverted cone frustum. The stack was supported by cords running over pulleys inside the tube or cup holder and carrying a block below the stack of cups. A knob by means of a ratchet raises or lowers this cup support, and by this means the stack of cups was raised, against gravity, to such a level that the top cup could be taken from the upper or open end of the tube or container.

This patent, of course, shows utter lack of appreciation of the sanitary or aseptic condition obtained by the Luellen devices. It shows, however, the natural way of storing cups or glasses, where the idea of furnishing a great number, to be conveniently obtained, one at a time, from the source of supply, was the object in mind. Hence we can see that Luellen was using old ideas in nesting his cups, in shaping them like a tumbler or cone frustum, in packing the stack or nest of cups in a holder or container in the shape of a tube not much larger in diameter than the cups themselves, and in subjecting the cups to the force of gravity when nested in the container.

It was the desire to keep the cups clean and uncontaminated that suggested closing the top of the container and taking the cup from the bottom. It was the same idea of cleanliness which suggested turning the cup from the inverted position to the upright position, where the lip or rim of the cup would still be within the case until the cup was to be used, which led Luellen to introduce the drum into his machines. But, prior to this last idea, which is shown specially in patent 1,043,854, the intermediate step of pouring liquid into the cup also necessitated turning it over from the inverted to the upright position, and to maintain it within the limits of the case while the liquid was being introduced.

It also appears, from such patents as Bigg & Hunt (British), 2,795, of 1872, Kinnard, 631,852, of August 29, 1899, House, 208,096, of

September 27, 1878, and Anderson, 464,628, of December 8, 1891, that paper was well known as material for making dishes to be used for both liquids and solids. The Maurel patent (British) 9,097, of 1906, shows a paper dish of cup shape, while in the United States the House patent, supra, shows a butter dish made of paper, with corrugated sides, and having a continuous flange following the edge of the corrugations, for the purpose of giving strength and maintaining the shape of the dish.

It needs no citation of patents to show the antiquity of the idea of metal, glass, or wooden cups with a rim or flange to stiffen the material and preserve the shape of the cup, and it certainly needs neither the citation of patents nor any discussion to show the unpatentability of the single idea of a flange or rim to assist in lifting or removing a cup or dish from the series of nested articles of that sort. Further, the idea of pushing apart the rims or edges of the two last articles in such a nested pile, and of making that separation sufficient in distance to remove friction from the sides of the cup, seems now so obvious that in a patent which will be discussed shortly (Lawrence) the drawings appear to have been universally scrutinized to see if they claim such forcible separation by a wedge-shaped member, instead of mere support of all the cups above the one at the bottom.

It is evident that if a nest of cups is inverted, and merely lifted by any one of those intermediate between the top and the bottom, the force of gravity will cause those below the one lifted to fall, if the weight of those below is greater than the force exerted by the friction between the sides of the one supported and the one next below. If the friction is great enough to overcome gravity, then all of those below will be lifted or held up by the one supported. Hence a forcible and positive separation of the cup which is to drop from those above in the nest must be of such extent and made so uniform as to render the result certain. The possibility of jamming a fragile paper cup, and the difficulty of opening a sealed cup holder in case one cup is jammed or caught, makes clear the impossibility of satisfactory devices where accident is not substantially impossible.

Luellen applied for a patent upon the cup which he had in mind at the same time that he was trying to secure an invention for the cup vendor. His cup had the various parts and proportions which have been described, and of course possessed the qualities of being light, cheap, sufficiently durable for all reasonable use on a single occasion, and with the conical sides at such an angle that, when nested, there would be opportunity for inserting some dividing means between the flanges of each two cups, but yet without flanges of large enough dimensions to interfere with drinking or to make the cup too rigid to be easily withdrawn.

Having reached this point, Luellen combined the closed holder for the nest of cups with a case containing the drum or receptacle by means of which the lower cup, after it had been released from the stack, could be turned over and brought into a position where, when filled with liquid, it would settle down from the weight of its contents,

into the opening or upon the shelf where it could be taken by the customer.

It may be assumed, as has been indicated, that the mere attachment of coin-operating mechanism and of liquid-supplying mechanism might be patentable as part of the total mechanism, unless individual patents for those special devices were infringed by the form in which they were combined by Luellen; and but two points still remain for consideration—one the detaching means from the stack of cups, and the other the means for slowly depositing the cup and holding it where it can be reached, and yet where it can be easily withdrawn or taken from the inverted drum.

The first proposition Luellen met by inserting two wedge-shaped flanges on exactly opposite portions of the interior surfaces of the circular heads or ends of the inverting drum. The sharp ends of these circular wedges would easily pass between the flanges of any two cups as nested, while the wide ends of the flanges were of sufficient dimensions to more than force apart any two cups to such an amount that friction would interpose no obstacle to the exertion of the force of gravity upon the lower cup. These circular wedges were placed just far enough apart, corresponding to the inside of the drum, so that each wedge would pass tangent to the side of the cup, between the rim and the place where the interior of the rim of the next cup would come to rest when the cups were nested.

The other point, namely, the means for presenting the cup, either to be filled with liquid and placed upon the shelf or to be presented to the consumer for withdrawal, was met by having the cup, after turning the drum to a point where the cup was in an upright position, fall through an opening, with sloping or inclined shoulders, which left an orifice just smaller than the flange of the cup, and through which it could be removed by slight distortion either under the weight of the liquid or by the person seeking to use the cup.

In the styles where no liquid is furnished, or where the bottom cup is to be withdrawn by removal when the cup is wished (as in patent 1,043,854, where the stack of cups is right side up, instead of inverted), the cup would remain suspended in the orifice until the force from the hand of the person taking it out would cause the distortion necessary to allow the cup to come through slightly out of line.

In the so-called "Dunn Amendments," two points, labeled *80* in the amended drawings, but which really are the sharp extended corners of the circular wedges above mentioned and shown in the original drawings, were designated as the points of suspension of the cup in the opening, because in fact the flange of the cup rested thereon. In practice it appears that in some of the later structures the points *80* are shortened, so that they do not furnish the actual support for the cup, except in so far as they may be beveled upon the upper side to make the inclined sides of the orifice through which the cup must pass. In the later designs, or those in which liquid is not furnished, the side of the case itself is used in place of the points *80* to form this orifice, and the cup falls directly from the drum, through the opening, with the flange resting upon the side of the case, and the

drum is not revolved far enough to bring the points *80* into a position where the flange of the cup would rest upon them.

This is pointed out by the defendant as a change from the structure shown by the original patent application, and even from the structure claimed in the so-called "Dunn Amendments," and the defendant therefore claims that it does not infringe, because it uses a form of device by which the cup remains suspended upon the sides of the orifice in the case, rather than upon anything corresponding to the flanges *80*.

It cannot be held, however, to be a material part of the patent that the orifice or sloping opening, in just the form required to deliver a cup when filled with liquid, must be adhered to in a structure where the use of liquids is not intended. In this sense, any other contact points, whether they be attached to the drum, or a part of the case rather than the drum, would be the equivalents of the points upon the drum itself in the more complicated structure. In the same way, when the device is not intended to furnish liquid, the drum does not need to be rotated so far, and after the cup has passed out of the drum, and is sustained by the case, the position of the drum has nothing to do with the cup or its use by the person seeking to withdraw it.

In the plaintiffs' structure, when a coin is used, the handle must be held down until the cup has been taken from the orifice, as the drum revolves so close to the case that it would sheer off, or bend or jam the cup, if the handle and drum, which are actuated by a spring, be allowed to fly back while the cup is still in the hanging position. In the defendant's structure, the space between the drum and the case is sufficient, so that the handle may fly back at once and the cup remain hanging. The plaintiff claims that his device is advantageous, in that no one can leave the machine with the cup hanging, thus assuring greater freedom from contamination. Defendant claims that the saving in damaged cups and less probability of getting the machine out of order overcomes the advantages claimed by the plaintiff.

With these matters of practical utility we have nothing to do. No invention would be involved in making the case sufficiently large to allow the drum to fly back and clear the cup, if that were desired. It is an obvious mechanical change, and both structures show the idea patented by Luellen in so arranging the parts of the machine as to hold a flexible and easily distorted cup by its edge or flange, and thus to deliver it easily, if filled with liquid, or to prevent its falling upon the floor, if merely dropped into the orifice by the revolving drum.

The idea of using a drum or rotating member for purposes of delivering articles from a supply is shown in the prior art, and particularly in the patent to Thompson (British), No. 3,585, of 1899. The defendant presents the Thompson patent as if he were charging infringement thereof, and as if the use of a drum or roller inside of the case, for the purpose of rotating or inverting an object and delivering it to some tube or opening, were ideas not open to the plaintiff in constructing his device. The Thompson patent shows merely a particular form of roller, with a slot or chamber to receive such articles as could be stored one above the other in a space or chamber for the purpose.

By the effect of a lever, the drum rolls around an axis to a point where the article may further roll or slide down an incline to the aperture.

The idea of a case and a rotating drum or member is such an old mechanical idea that the Thompson patent may readily be seen to be but a limited form of such device, and his invention seems to consist in the arrangement of such parts with guides and pins by which an inserted coin may supply the necessary part to transmit the movement of the lever to the drum. The fact that Luellen made use of a rotating drum to deliver and invert a cup, and also made use of a coin, would not show infringement of the Thompson patent; and, if the Luellen combination shows invention, the mere teaching that a drum and coin mechanism may perform certain functions does not render invalid the Luellen patent.

The rotating or separating wedges of the Luellen drum furnish the next matter which must be taken into consideration. In the defendant's structure no wedges are in the drum, and the side walls of the drum aperture are beveled, so far as there is any need of furnishing an inclined surface, in the neck leading to the orifice. The separation of the lowest cup from those in the stack above, and the support of the stack, is furnished by four sets of two circular wedges. These circular wedges are fixed upon vertical posts or axes, and rotate in a horizontal plane by means of gear operated directly in the space above the drum by the handle, which also, through a separate gear, rotates the drum and delivers the cup upon the insertion of a coin. In so far as a circular wedge, by rotation between the flanges of two cups, separates those flanges, the mechanical methods of the two devices are the same. It would not be invention to change a wedge rotated in a vertical plane upon the drum to a wedge in a horizontal plane operated by gear either directly in contact with the drum or gear connected with the handle which also moves the drum.

But certain other features require further investigation of these wedges. In the plaintiffs' device, the handle, following the rotation of the drum, moves in a vertical circle. In the defendant's device, the handle moves in a horizontal plane. In the plaintiffs' device, the lower cup is forced down on the return stroke of the handle, and the stack is held in one position by the outer circumference of the circular wedges. In the defendant's device, the lower cup is moved down by the forward motion of the handle to turn the drum, while at the same time the stack of cups is raised by the upper flanges of the rotating wedges, until the lowest cup is entirely free and drops from its own weight, when the drum returns to the starting point. But in each case a cup remains in the drum until it is again turned forward, and the difference in operation is merely mechanical change.

Early in the taking of testimony, it appeared that the defendant was supposed to have had before it the plaintiff's patent application and drawings in connection with certain endeavors to enlist a gentleman, now connected with the defendant company, as an investor in the plaintiff's patents. It was charged, and some testimony offered to prove, that these patents, drawings, and applications were before the

defendant's experts when the defendant's machine was constructed, and that it was deliberately intended to make use of the patentable ideas shown by the Luellen drawings, but at the same time to avoid infringement by making immaterial changes in construction. The testimony on the trial, however, has shown that this larceny of ideas did not take place in the sense in which it was charged. The facts seem to prove that the gentleman in question was interested in the subject of individual paper cups and cup dispensers by Mr. Luellen, and that the general idea of putting on the market such a device was discussed by them. He did not reach an agreement with Mr. Luellen, and began a search of the prior art, in connection with his counsel and experts, to see whether any such structure as the plaintiff was planning was patentable. They reached the conclusion that it was not, and they constructed a machine embodying those features which were old and well known in the Luellen idea, but at the same time attempting to make their own device a combination of the Pierce and Thompson structures. He then looked further for some means of separating the lower cup and causing it to fall into the receptacle in the rotating drum.

The patent to Petsch, No. 15,643, of 1896, suggested a device to perform the function of separating the cups. Certain features of this patent were modified and applied bodily in the place of the vertical circular wedges of the Luellen machine. This Petsch patent (British), 15,643, of 1896, was by an Austrian engineer, and was intended for the delivery of cards or tickets in small, pasteboard, numbered boxes, which could then be used for the inclosure of advertisements or advertising matter to be dropped through a slot or opening in the machine. A coin was to be used to release the device. Four circular discs (so positioned that an open quadrant in each disc would be brought under the corner of the stack of boxes, when the discs rotated through 90 degrees) support the pile of boxes in a case above these discs. Upon insertion of the coin and movement of the lever, the discs are rotated by means of a gear through the 90 degrees arc, and the stack of boxes could then fall. But, just ahead of the position in which the vacant quadrants reach such position as to form the opening for the boxes, four other wedge-shaped discs, each of which is mounted upon one of the axes supporting the discs just below, and placed at a height just equal to one of the objects contained in the stack or pile, and which also are cut away so as to have the circular wedge begin at that chord (of the circular wedge), forming the boundary of the aperture through which the boxes are to pass, rotate under the second box in the pile and lift the entire pile away from the one which is to be allowed to fall.

In so far as the defendant uses a supporting disc and rotating wedges mounted upon the same axes, and in so far as he arranges these discs and wedges so that the vacant segments shall be correctly positioned to leave the desired opening through which the stack of cups is allowed to fall upon the lower discs, and so that, then, the lower cup is allowed to fall through those discs after rotation to the point desired, the defendant is using a form of the Petsch device. Whether, again, he could be said to be infringing Petsch is not the question. The prin-

ciple of so placing discs as to allow them by uniform rotation to form an opening through which an object may pass by the conjunction of vacant quadrants, is of course well known. The similar carrying of a second disc to intercept articles above the lowest one is old, and the question we have to consider in the present case is not whether the defendant has shown any invention in adapting some of the ideas displayed in the Petsch patent, but rather whether he has merely used the particular form of wedges also employed by Petsch in order to perform the functions which Luellen accomplished by the use of a wedge of a slightly different shape and design.

Another patent to Flatau, granted March 31, 1914, No. 1,091,921, upon application filed June 30, 1913, for dispensing cups, with lips, from a magazine, by moving in oscillatory rotation certain discs having segmental wings to support the cups when in normal position, and another wedge or flange coming into position by the rotation of the discs, so as to spread the cups, illustrates the simplification or development of the idea borrowed by the defendant from Petsch, and shows that it may be possible to make a patentable improvement or change in the details of the devices in question. This would indicate that the defendant might have patented as an improvement, or as another form of the Luellen delivery member, his development of the Petsch wedges, but does not answer the question as to whether Luellen by his claims has obtained the right, in a basic sense, to the general idea of a dispensing device which will insert a rotary wedge between the flanges of nested cups to cause positive separation, and whether he showed invention in realizing and utilizing the idea of such flanges in connection with the rotary drum and the stack of cups nested in a container (particularly when the cups were of the flexible sort, which could be manipulated by such a machine, and yet be suitable for drinking purposes, without too great cost for each cup).

But one more patent from the prior art needs to be stated, and that has been referred to before as the Lawrence patent. This patent (British), No. 14,501, of 1888, shows in one drawing an apparatus that none of the experts in the case have thoroughly explained in workable condition. This complicated structure is evidently simple enough in theory, so that a skilled mechanic could make the parts work by adjustment, if a model was constructed. The purpose of the device is to furnish liquids in a cup, either to be returned to the machine or to be made of paper and thrown away, to supply the liquid from a receptacle inside of the cabinet, and to have the entire mechanism inclosed, except for the lever, by which the apparatus is to be operated, the coin slot, and the opening through which the cup of liquid is delivered..

The drawings show that as early as October 9, 1888, the idea of nesting cups and confining them in a container, and of supporting the stack by the lowest cup, was considered old in the art. The mechanism was to release the lowest cup, so that it might be pushed or fall down into a place for being filled. The cups shown by the drawing were to be made of paper, and were to have a metal rim, while lugs were to be provided for each side, to engage in guides.

The general mechanism has nothing to do with the questions to be considered by us; but, as has been stated, the experts entered into a long discussion as to the relative size of the parts shown in the drawing and the possibility of making the parts work in the form shown by the drawing. The descending cups hang in the Lawrence patent through the space existing between two arms on opposite sides of the stack of cups at the points of the circumference where lugs upon the cups move in upright slots or guides. Upon being drawn back by the motions of the lever, these two arms would release the stack, except that a second pair of arms protruding from the opposite direction, but in apparently the same vertical planes, pass through below the lugs of the next cup from the bottom, just as the first set of arms reach a point where they cease to support the lugs of the cup below. As the cups cannot move sideways because of the guides or slots, the stack is maintained while the lower cup falls. Much effort was devoted to attempting to prove that these arms supporting the lugs of the cup next to the bottom of the stack were of sufficient width to force apart and to impart a wedging action to the lugs of the lowest cup and those of the cup immediately above.

The drawings of the Lawrence patent and the needs of the Lawrence device do not seem to indicate that Lawrence made any change or adjustment for the purpose of positively and forcibly separating the two cups. The cups which he intended to use were with metal rims or made entirely of metal, and were of sufficient weight to fall without sticking to the cups in the stack above, when the support was released.

Further, he seems to have considered the use of a rim of such width, or to make his conical frustum of such proportions that the cups would not bind or stick one to the other, although in Figs. 8 and 9 of the Lawrence patent he seems to have depicted cups which would cause difficulty if an attempt were made to construct them of paper and to nest them in the form of the plaintiffs' and the defendant's devices. But these cups are also said to have lugs, and Lawrence did not attempt to solve the problem by anything other than the force of gravity.

The original Luellen device contains some of the features of the Lawrence patent. The stack of cups, the delivery of the cup onto a shelf, where a fixed supply of liquid could be placed into each cup, and the removal or carrying of the cup, when filled, into a position from which it could be taken by the customer, who was enabled to accomplish all these results by a movement of the lever after inserting the coin, indicate that Luellen was attempting a simpler and improved method of doing some of the things which the Lawrence structure was planned for. But Luellen had in mind the use of cups not rendered rigid or heavy by metal rims or lugs, which were capable of distortion in sufficient amount to avoid the cumbersome mechanism of the Lawrence patent, and at the same time to make it possible to use them as drinking cups, and not as dishes or jelly glasses, such as the paper receptacles shown in Maurel, supra. The sanitary idea required direct departure from the Lawrence device.

Assuming that a cup of this nature was in the mind of the inventor,

it would seem to be patentable invention to furnish one complete, simple, and effective machine, which as a combination would render the service desired, and at the same time meet the demands created by the enlightened scientific knowledge of the public as to the dangers from a common drinking cup. But this must be done cheaply, and Luellen's device accomplishes the purpose.

It can be easily appreciated that a form of the apparatus without the coin attachment, or a form of the apparatus without the connection to the tank of liquid, would merely furnish other developments of the same idea, and that the handling and furnishing of a cup from the nested supply of cups involves the essential features of the machine, so far as the furnishing of this particular style of cup is concerned. Hence the original patent application was plainly divisible, and the three forms of device were each patentable; but all were based upon the general and broader idea shown in the patent for the supplying and delivery of the cup alone.

When we come to consider the later patent, in which the cup is not delivered, but is always accessible, an entirely different proposition is presented, and with that we have nothing to do in this action. It will be seen, therefore, that the Lawrence patent adds nothing to the recognized proposition of the prior art, except to prove that one of a stack of nested cups can be filled with liquid and delivered by a coin-actuated machine. The cups being in an upright position, the stack and movement of the cups more nearly resembles in some respects the device of the Luellen patent, No. 1,043,854, and Flatau, supra, than those of the patents in suit.

When Luellen conceived the idea of inclosing his stack of cups in a tight case and inverting them, so as to withdraw the bottom cup from the stack, thus allowing a substantial support for the cups and accomplishing the detachment of the lower one by separating the rim of that cup from the rim of the cup above, of so combining the structure for so doing with a delivery drum, which could be utilized to retain the cups until final ejectment (and for filling it in the meantime, if desired), and with all of these structures inclosed in a smooth case, which would allow a coin-actuating mechanism to be attached or not, he seems to have employed invention, and to have obtained an idea which was patentable over any of the devices shown in the prior art. The file wrapper in the case indicates this to have been the idea of the Patent Office in finally granting the patent. The various features from the prior art patents were cited, one at a time, and ultimately the claims as allowed are based upon and plainly show recognition of the proposition that the Luellen structure was more than an aggregation of the different parts into which the examiner had previously been dividing the device, and hence rejecting the different claims in turn.

Much of the defendant's argument and substantially the greater portion of its brief is devoted to a discussion of the language of the claims. It is contended that Mr. Luellen's present attorney discovered, or at least appreciated and stated for Mr. Luellen, the ideas which finally met with the approval of the Patent Office at the time

of the final amendment in 1912. Certain of the original claims are charged to show simply the Lawrence device. Certain of the amendment claims, namely, 3, 7, 9, 11, 22, 33, 34, 36, 38, and 39, and also original claims 2, 4, 16, 19, and 20, are also claimed to be void because of the Lawrence patent. Claims 40 and 41, claiming a plurality of wedging members, are alleged by the defendant to have been directly aimed at the defendant's structure after it was known to the plaintiffs' attorney. But, if the rotating wedges of the Petsch patent are merely the equivalents of the circular wedges of the Luellen drum, and as claims 40 and 41 can be read upon the original Luellen drawings, there seems to be no reason at all why Luellen's attorney should not have stated his claims in any way which would protect the device and the invention shown by the Luellen drawings.

A comparison of the Luellen cup with that of the so-called "Lily" cup of the defendant shows that the modified angle of the rim in the Lily cup, and the greater tendency of the wedges to slip over the edge if the cup sticks in the stack, makes the use of more than two wedges a practical improvement. Of course, Luellen could use but two parallel wedges in rotating his drum, so as to apply these wedges in parallel planes tangent to the sides of the cup. The greater the number of wedges on vertical axes, the less opportunity for distortion of the cup or flange. It is evident that, with several such wedges, a cup could be used having no flange and depending upon the conical shape alone to give a bearing surface to the longitudinal thrust of the wedges. But even if patentable as an improvement, it would involve use of Luellen's general idea of forcible separation, and the idea is open only to one who has the right to use Luellen's patent. Such an adaptation or improvement is set forth in the Flatau patent, supra, and was not patented by the defendant in the form used in its structure. So when Luellen refers to a "plurality" of wedges, he means *two,* when they consist of wedges parallel to each other on opposite sides of the drum, and yet may include more, if arranged in other forms that are equivalent in function.

The other objections to the claims are all of the same nature. The defendant objects to the general claims upon the ground that the patent should be limited to the device shown by the specifications and drawings. It denies infringement if, the claims be so limited. But, as has been shown in the discussion of the device, infringement exists in every particular, except that of the possible improvement shown by the employment of several of the so-called Petsch circular wedges. These appear to be no substantial gain, unless with a cup having but little flare, and, even so, are but the equivalent of the device shown by the Luellen specifications, and would be patentable only as an improvement or modification thereof. The Luellen device patent, therefore, should be held valid and infringed.

[3] In some senses the cup patent is of even greater importance than that for the dispensing machines. A cup of such a nature that it will be cheap, light, not durable, easily flexible, and yet strong enough to be used for at least one drink, and with a *flange* (or *edge)* which will allow the operation of the simple withdrawing device shown

by the patents just discussed, of sufficient cone shape to nest conveniently, and receiving strength from the rim to reinforce the light paper of which the cup is made, is recognized as an essential for the cup-operating device. The Lawrence and Pierce patents show paper cups of the general cone frustum shape. A rim to strengthen the cup is as old as metallic cups themselves. Whether a cup be made of one or two pieces, or even if it be constructed from a solid block of material, has nothing to do with the question of the patentability of its general design and form. The defendant uses a cup made of paper and folded from one piece. The Anderson patent, No. 464,628, granted December 8, 1891, describes the machinery for folding paper or leather into dishes with a flat bottom and pleated or fluted sides. So, also, the Thompson patent, supra, shows a cup or dish with fluted sides. The Saltkorn & Nicolai patent, 386,932, granted July 31, 1888, was for the making of pleated paper covers to bottles, while the Bigg & Hunt patent (British), 2,795, of 1872, described the manufacture of pleated or goffered ice or jelly holders or boxes from a single piece of paper.

The cup of the defendant is claimed to be that patented by Claussen & Claus, upon the 24th of October, 1911, No. 1,006,722, upon application filed June 1, 1911. It has some of the features shown in the product of the machines just referred to, namely, a flat bottom and pleated sides. It rolled the edge or rim, and suggested the use of paraffined or waterproof paper, which by the use of hot dies would cement and firmly stick together the folds of the pleating. The waterproofing material is pressed or molded into what is called a "beaded rim."

The defendant's cup is known, and called in its advertising matter, the "Lily" cup, and is further described in a design patent issued May 14, 1912, under No. 42,500. The rim of the Claussen & Claus cup is either the turned over or rolled edge of the usual metal cup, or like that which is shown in a patent to Kinnard, No. 631,852, granted August 29, 1899, while the edge of the Lily cup is not the annular "unbroken" *flange* shown by the Luellen patent, and yet does not seem to be the durable solid "bead" of Claussen & Claus.

In the Patent Office, rejection of the Luellen application was made upon various patents for paper vessels and for cups suitable to be used in a stack and for nesting. The patents which have been discussed above, including those referred to with respect to the dispensing device, were cited, and Mr. Luellen did not succeed in obtaining a patent until the flexibility of the cup, combined with the feature of the folded flange (thus furnishing a means for using the dispensing device and at the same time removing the cup from the orifice with slight distortion, while not making it incapable of use for drinking by the presence of a large rim), came to be recognized by the examiners in chief as involving patentable novelty.

The claims of the Luellen patent, No. 1,032,557, are as follows:

"1. A drinking cup for use in connection with vending machines made of thin flexible paper having an open end folded outwardly to form a narrow flange integral with the body of the cup.

"2. A drinking cup for use in connection with vending machines made of thin flexible paper having a narrow flange integral therewith around its open end, the flange forming an unbroken uniform part of the body of the cup."

In his application Luellen stated that the drawings showed one "embodiment" of his invention, and also stated that he preferred to furnish the projection on the cup "by a continuous flange *12* integral with the wall *10;* it consisting of a single thickness of paper turned over and lying substantially in the plane of the edge." His claims showed generally a cup having a projection or "integral flange" lying substantially in the plane of said edge or "at right angles to the axis." Upon rejection, he amended to read "wholly in the plane of said edge," and "lying in a plane at right angles to the axis." This was again rejected, and he finally amended to read "an open end folded outwardly to form a narrow flange integral with the body of the cup" and "the flange forming an unbroken uniform part of the body of the cup."

While the "preferred" style shown in the drawing and specification does not limit him to the exact design, and while his claims are broad enough to cover equivalents of the parts shown, yet it must be held that he nowhere claims or teaches any rim, except that which may be called a "flange," which is "folded" (not rolled or turned out), and which corresponds to an annular, unbroken ring of "a single thickness of paper" around its open end.

The Lily cup does not have an "unbroken uniform" ring made of thin flexible paper, but has a broken and varying (in thickness) lip, which is made even and stiff by a deposit of the waterproofing material. It is not *folded* and is not a *flange.* The Luellen flange is "unbroken" only in its circumferential direction, and of course is not "broken" off or loose. In the sense of an annular integral and single thickness flange (to which the claims are evidently limited and which Luellen tried to patent in terms), the Lily cup does not infringe. Furthermore, the edge or rim of the Lily cup does not lie to any appreciable extent in the plane of the axis, or any plane approximating thereto. Luellen's use of the word "flange" limits him to the general idea of his specifications, in which the "angle of maximum effectiveness" shows his idea of a flat annular ring at a definite angle or in one general plane.

He cannot enlarge that idea by now claiming the general form of a flexible cup with a curved or flaring rim, acquiring strength and stiffness by folds in the material and by the deposit of waterproof material. His element of strength was obtained by the use of a *flange,* and his preferential design was only within the limits of a structure of that nature.

The patents in suit will therefore be held valid, and patent No. 1,081,508 will be held infringed, but that patent No. 1,032,557 is not infringed by the defendant's Lily cup.

Decree may be had accordingly.