INDIVIDUAL DRINKING CUP CO. et al. v. PUBLIC SERVICE CUP CO.
INDIVIDUAL DRINKING CUP CO. v. ERRETT. SAME v.
HUDSON RIVER DAY LINE.

(Circuit Court of Appeals, Second Circuit. February 26, 1918.)

No. 146 (46, 47).

1. PATENTS ⬤⟿328—INVENTION—PAPER CUP.
　　The Luellen patent, No. 1,032,557, for a paper cup, held void for lack of
　invention.
2. PATENTS ⬤⟿328—VALIDITY AND INFRINGEMENT—DISPENSING APPARATUS
　FOR PAPER CUPS.
　　The Luellen patent, No. 1,081,508, for a dispensing apparatus for paper
　cups, claims 18, 26, 34, 41, 48, and 49, held valid, and infringed by a
　vending machine for cups, but not infringed by a free dispenser. Claim
　16 also held valid, but not infringed.
3. PATENTS ⬤⟿325—SUIT FOR INFRINGEMENT—COSTS.
　　There is no fixed rule governing the allowance of costs made on an
　accounting for infringement, but each case must be disposed of on its
　own merits, and the matter rests in the discretion of the court.

Appeals from the District Court of the United States for the South-
ern and Eastern Districts of New York.

Suit in equity by the Individual Drinking Cup Company and others
against the Public Service Cup Company. From the decree, both par-
ties appeal. Suits by the Individual Drinking Cup Company against
Charles Errett and against the Hudson River Day Line. From the
decrees (226 Fed. 465; 234 Fed. 653; 237 Fed. 400), complainant
appeals. Decrees modified and affirmed.

Clifford E. Dunn, of New York City (J. Edgar Bull, of New York
City, of counsel), for plaintiffs.

Hans v. Briesen and Fred A. Klein, both of New York City, for de-
fendants.

Before WARD and ROGERS, Circuit Judges, and MAYER, Dis-
trict Judge.

MAYER, District Judge. The appeals in these three cases were
argued together and concern two patents, viz.: Letters patent (a) to
Luellen, No. 1,032,557, for a paper cup (the "cup patent"), applied for
May 23, 1908, and granted July 16, 1912; and (b) to Luellen, No. 1,-
081,508, for a dispensing apparatus for paper cups (the "apparatus
patent"), originally applied for April 2, 1908, later divided and granted
December 16, 1913. There are three alleged infringing devices, viz.:
(1) the so-called Lily cup; (2) a penny-in-the-slot or vending machine;
and (3) a free dispenser.

In the suit in the Eastern district (called by the parties for conven-
ience the "Brooklyn suit"), both patents were involved, and the court
held (by final decree) the following claims of the apparatus patent
valid and infringed by the Brooklyn defendants' "vending machine,"
viz.: 3, 4, 5, 7, 11, 12, 13, 14, 15, 16, 17, 18, 20, 22, 25, 26, 27, 28, 34,
35, 36, 37, 40, 41, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, and 54—and
also held the two claims of the cup patent valid, but not infringed.

In the suits in the Southern district (called by the parties for convenience the "New York suits") only claims 16, 18, 26, 34, 41, 48, and 49 were in issue. In the suit against the Hudson River Day Line, the vending machine alone was involved, while in the suit against Errett it was alleged that both the vending machine and the free dispenser were infringements. The cup patent was not involved, but Errett was charged (in addition to direct infringement) with contributory infringement of the apparatus patent by reason of his sale of cups to be used in connection with infringing vending machines. The court (in interlocutory decrees) held claims 26 and 49 valid and infringed by the vending machine, but all the other claims invalid, and further held that the free dispenser did not infringe any valid claims. The court also held Errett for contributory infringement under Henry v. Dick, 224 U. S. 1, 32 Sup. Ct. 364, 56 L. Ed. 645, Ann. Cas. 1913D, 880.

Plaintiff appeals from that part of the Brooklyn decree affecting the cup patent, and defendant from that part affecting the apparatus patent. Plaintiff further appeals from that part of the New York decrees holding claims invalid or not infringed; but defendant does not appeal as to the claims held valid, believing such course unnecessary (and stipulating that such course shall not be construed as any waiver), in view of the fact that the two claims held valid in the New York suits must be passed on by virtue of the appeal in the Brooklyn suit. At the conclusion of the argument, plaintiff's counsel withdrew "without prejudice" all the claims in the Brooklyn suit which were not involved in the New York suits, except 52 and 53. As this was objected to by counsel for the defendants, owing to the reservation of "without prejudice," the withdrawal cannot be permitted.

It will tend to simplify discussion concerning some of the features of the case to dispose at the outset of the claims considered in the Brooklyn suit other than those in issue in the New York suits plus 52 and 53. For the purposes of this litigation it is sufficient to state that under the most favorable construction these claims are not infringed. As to claims 52 and 53 the language is so broad that, if the construction contended for by plaintiff be given, they would be void, and, for the purposes of these suits, it is enough to hold them not infringed. Plaintiff practically conceded that claims 16, 18, 26, and 49 of the apparatus patent are not infringed by defendant's free dispenser. The controversy as to the apparatus patent, therefore, is confined as follows: (1) Validity of claims 16, 18, 26, 34, 41, 48, and 49. (2) Infringement of these seven claims by the vending machine. (3) Infringement of claims 34, 41, and 48 by the free dispenser.

The subject-matters of the suits are the machines and paper cups familiar to the public for dispensing drinking water, and obtainable either from a vending coin machine, or, as in factories, clubs, etc., from a so-called "free dispenser." The business has attained large commercial success, but, while commercial utility is often most serviceable in resolving doubt as to patentability, it is no help in this case, because of the impetus given to the business by statutes and ordinances requiring individual drinking cups and a keener and more widespread

appreciation of the dangers said to lurk in the common drinking utensil.

When Luellen put forward his apparatus and cup, he did not create a market, but provided means to satisfy a market then waiting. His problem involved solving three practical requisites: (1) Cheapness, including compactness; (2) reliability in delivering cups; and (3) protection of cups from contamination prior to use. The field was far from new, for others, in previous and less propitious times, had made substantial contributions, and all that was left was a step beyond the prior art sufficient to insure the requisites, supra, and ingenious enough to escape the eye and thought of that elusive person, the man skilled in the art. In approaching the problem, it was necessary, of course, to bear in mind both machine and cup, and, naturally, machine and cup must work together to be successful; but, because invention is found in one, it does not follow that it resides in the other. The ordinary mental process would be to devise the machine and then accommodate the cup to its purposes, rather than academically to plan a cup and then build a machine to fit it.

[1] Nested tapered paper cups were old (notably Lawrence British patent, No. 14,501 of 1888, and Allin British patent, No. 16,559 of 1888), and the mechanical problem was to detach them in simple effective fashion. Lawrence invented a coin-controlled apparatus "for the delivery of liquids * * * and of receptacles such as cups or cans of paper, metal, or other material for holding or receiving the same." He pointed out in his provisional specification, that:

"The cups may be made of metal ware or paper; * * * in the latter case they are designed to be used but once, and to make them sufficiently cheap it is necessary to make them of comparatively thin paper and to strengthen them with metal."

He further stated:

"The metal work of such a cup will consist of a thin metal or wire rim. * * * The cups, whether of metal or paper, are provided with a projection or lugs, * * * or a projecting rim for the proper operating of them by the mechanism of the machine."

In his complete specification, Lawrence expressed his preference for cups made of paper, "a truncated conical piece of paper, * * * the same being held and rendered sufficiently rigid by a rim of metal, flat metal, or wire."

Bigg and Hunt (British patent, No. 2,795 of 1872), many years before, and Vierengel, later (United States letters patent No. 463,849, dated November 24, 1891), had respectively invented machines for making plated paper cups, and, in view of the latitude of the Lawrence disclosure, the real problem was, not the form nor the material of the cup, but the mechanism with which to manufacture it, so as to attain both the rigidity and flexibilty, in association with an appropriate dispensing or discharging apparatus, which Lawrence had made sufficiently clear. This development found final expression, so far as concerns defendant's cup, in the Clausser & Claus patented machine of 1912, which is mentioned solely as illustrating that the problem, after Lawrence, was one of manufacture of the cup, rather than of the cup itself, in relation to the dispensing apparatus.

The careful review of other prior art, and the accurate technical description of plaintiff's and defendant's cups set forth in the opinion of the District Judge, render further reference unnecessary. We not only agree with his conclusion that there is no infringement, but we are of opinion also that the patent is void for want of invention.

[2] In respect of the apparatus patent, defendant at the outset insists that there was an insertion of new matter and an unlawful expansion by reason of elaborate amendments known in the case—by the name of the solicitor who framed them—as the Dunn amendments. Both District Judges held this contention unsound, and with their conclusions in that regard we agree. Such belated amendments demand careful scrutiny; but, where they deal with words rather than substance, the rights of an inventor should not be impaired, and the difficulties with which Mr. Dunn was dealing were those of full and apt description and careful claim, drafting not infrequently encountered in specifications covering those classes of mechanical inventions which involve an infinity of detail. Here again the careful and comprehensive review in 226 Fed. 465, makes repetition unnecessary, and enables us to confine our discussion to the principal references which are: (a) As to invention, Lawrence; and (b) as to infringement, Petsch.

The Lawrence patent is fully discussed by both District Judges, and they agree, in substance, that Lawrence failed to arrange for the positive and forcible separation of two cups nesting together, and with this view we also agree. We think it is quite plain that, in Lawrence, escapement mechanism is provided for dropping the cups from the stack one by one by means of gravity, and we are satisfied that, if the cups stick together, the Lawrence machine will not work. To remedy this, after a lapse of 20 years, seems to us to have presented a problem of sufficient difficulty to amount to invention. Of course, whether the solution of such a problem rises to invention is always a close question, and often embarrassed in a case of this kind by the after-understood simplicity of the device by which the problem has been solved—as is well illustrated by the difference of opinion as to invention between the two experienced judges who had this question before them. The means which Luellen has provided for separating the terminal cup from the nest is a pair of semicircular wedges, which enter between the flange of the lowermost cup and the flange of the cup next above it. When the terminal cup is thus separated from the nest of cups, it falls onto a projection or plug in the interior of the drum. The cup is then supported in an inverted position. When the handle 52 is turned to the right it rotates the drum, and therefore turns the cup right side up. The cup, being right side up, then falls away from the plug or projection, and its rim is caught by the projections 80, 80, where it is temporarily supported, as shown in Fig. 15. On the return movement of the handle, the semicircular wedges are inserted between the rims of the last two cups, and the terminal cup is disengaged and dropped onto the plug or projection 44. The result is most effective. The apparatus, in coaction with the cups, works admirably, and the requisites of the art to which we referred supra are entirely met.

We hold, therefore, that claims 16, 18, 26, 34, 41, 48, and 49 are valid.

Infringement as affecting defendant's vending machine: Claim 16 is ambiguously worded,[1] and as matter of phraseology is susceptible of the interpretation, either that "movable with" means (a) as defendants contend, that the wedges and drum are physically integral and so moved together; or (b) as plaintiff contends, moving at the same time with. Resort to the specification and other claims (particularly 23) still leaves the meaning in too much doubt to resolve the interpretation in favor of plaintiff's contention. We therefore agree with the District Judge in the New York suit that this claim is not infringed, and we are inclined to consider that his reasons for his conclusion are sound.

Whether the remaining claims are infringed depends on the significance of the Petsch patent (British No. 15,643 of 1896, and United States No. 593,754). This patent was for an automatic advertiser, and was intended for the delivery of cards or tickets in small pasteboard numbered boxes, which could then be used for the inclosure of advertisements or advertising matter to be dropped through a slot or opening in the machine. A coin was to be used to release the device. The description in technical detail of the Petsch patent is recited in 226 Fed. 465. What, in effect, this patent discloses is an escapement mechanism for flat articles, which, of course, do not stick together, and to detach which positive separating means are not necessary. The fact that the edges of the upper members of the escapement are wedge-shaped is simply to facilitate their insertion between the boxes of the stack, the movement of these members being only about 30°. No substantial wedging action is possible.

The question is, as said by the District Judge, in the Brooklyn suit, whether defendant "has merely used the particular form of wedges also employed by Petsch in order to perform the functions which Luellen accomplished by the use of a wedge of slightly different shape and design." We think the answer must be in the affirmative, for we are satisfied that, but for Luellen's disclosures, the embodiment in defendant's vending machine of some ideas which were later found to be similar to those of Petsch, would never have occurred in such manner as to make defendant's device a practical machine for vending paper cups.

We are of opinion, therefore, that claims 18, 26, 34, 41, 48, and 49 are infringed by defendant's vendor.

We agree with the District Court in the New York suit that no claims are infringed by the free dispenser, unless a broader meaning is given to these claims than we think should be accorded. An inspection of this device of defendants is sufficient to exhibit noninfringement; but, if any reference is needed, Wilson & Nealey's United States patent No. 570,113, for a "cork cabinet," should suffice. It is argued that this patent is in a nonanalogous art, on the theory that the ejection or releasing of corks is far removed from the dispensing of paper cups. We appreciate that it is often difficult to draw the line between analogous and nonanalogous arts; but where, as here, nested cups were well known, and the problem was to withdraw them one

---

[1] Claim 16 reads: "16. The combination, with a cup receiver, of a movable delivery member provided with a cup recess, and means movable with the delivery member for drawing a cup from the receiver into the recess."

by one, we think that the subsequent art must be charged with knowledge of prior patents dealing with the withdrawal of small resilient or compressible articles, such as corks, from any kind of cabinet, container, or receptacle.

In so far as affects the patent features of the three suits, the decrees must be modified as here indicated.

As defendant Errett did not appeal from the New York decree, we do not discuss the question of contributory infringement.

[3] The final question to be disposed of involves that part of the decree in the Brooklyn suit which provided that defendant should pay one-half of the master's and stenographer's fees upon the accounting. The amount involved is $35. Plaintiff was not successful, and finally abandoned the accounting proceeding. Such costs in equity rest in the discretion of the court, and, while in some instances the courts have considered it proper to require unsuccessful plaintiffs to pay the costs, yet each case must be disposed of upon its own merits, and in this case we fail to find any abuse of discretion in this regard.

The decrees are modified as indicated, and, as modified, are affirmed, without costs.