## VORTEX MFG. CO. et al. v. F. N. BURT CO., Limited.

(District Court, W. D. New York. February 15, 1924.)

1. Patents ☾‑328—15,381, reissue for blank for paper cups, held valid and infringed.

Reissue patent No. 15.381, dated June 13, 1922, to Curtin, the original patent being No. 1,188,048, of June 30, 1915, for blank for paper cups, *held* valid and infringed.

2. Patents ☾‑36—Doubt resolved in favor of claim where income from licenses is large.

Where the income derived from licenses is large, any doubt as to the validity of the claim should be resolved in its favor.

3. Patents ☾‑144—Decision of Patent Office entitled to great weight.

A decision by the Patent Office as to the scope of claims of a reissue patent is entitled to great weight, but is not conclusive in a suit in a District Court.

4. Patents ☾‑138(2)—Delay in applying for reissue held not to deprive plaintiffs of remedy for infringement.

Where the application for reissue was made promptly after learning that the original claims only broadly covered the invention, and that narrower claims would more completely afford protection from infringement, *held,* that there was not such unreasonable delay in applying for the reissue as to deprive plaintiffs of their remedy for infringement.

5. Patents ☾‑138(2)—Evidence as to reissue patent held not to establish defense of intervening rights.

Evidence that defendant entered the field prior to the reissuing of plaintiffs' patent, but at a time when the validity and scope of plaintiffs' original patent was still unquestioned, and when plaintiffs' production had created an extensive market, *held,* not to establish the defense of intervening rights.

In Equity. Suit by the Vortex Manufacturing Company and another against the F. N. Burt Company, Limited. Decree for plaintiffs.

Charles W. Hills and Charles W. Hills, Jr., both of Chicago, Ill. (J. William Ellis, of Buffalo, N. Y., of counsel), for plaintiffs.

Duell, Warfield & Duell, of New York City (H. S. Duell, of New York City, and Frank A. Abbott, of Buffalo, N. Y., of counsel), for defendant.

HAZEL, District Judge. The plaintiffs allege infringement of reissue patent No. 15,381, dated June 13, 1922, to David F. Curtin, inventor, the original patent being No. 1,188,048, of June 30, 1915, for blank for paper cups. The patentee designed to provide a blank of paper of suitable form and size for making by machinery a conical paper cup to be used as a container of soda water or other soft drinks. The paper cup of the patent is preferably treated with paraffine or a waxy substance, but it may also be made of plain paper. The original patent had 3 claims, and the reissue 9, of which claims 3 to 9, inclusive, are involved. Claim 3 is the broadest, and is precisely the same as the original claim 3. It reads as follows:

"3. A blank for forming conical vessels, the blank being of approximately quadrantal form, having a curved and two straight edges, and the said blank having an extension between the adjacent ends of the straight edges, said extension being partially separated from the blank at one of the straight edges."

All the reissue claims except the third impose limitations, and separately include a blank of approximately quadrantal form, with a curved edge and two straight edges, and an extension or projection between the adjacent ends of the straight edges or approximately straight edges, which are partially separated from the blank by one of said edges. The defenses are noninfringement, invalidity in view of the prior art, intervening rights, and laches in applying for the reissue.

[1] Drinking cups of various forms, formed by twisting, folding, or rolling paper to impart a conical shape, are an ordinary expedient known to young and old from time immemorial. At the date of the original application for patent numerous cut blanks for folding or rolling into paper cups or cones had been used. It was old to make blanks by machinery with the edges at the top lying in an irregular plane, and having a tongue or projection at the side for closing the apex and to give strength or reinforcement to the bottom edges (Stone patents), and a quadrantal blank piece of paper could easily be folded mechanically into a cone-shaped cup, or cornucopia, and at the same time be of neat appearance, water-tight, and reinforced at the point of greatest strain (Brady patent). A conical cup with the edges lying in a plane, formed of a paper blank suitably slitted from the edge (Plaintiff's Exhibits 22, 23, 24, and 25), and then rolled by machinery upon itself to make the cup, was also a known method, together with the cone-shaped cup that was either rolled or folded from a blank and then strengthened and reinforced at the end by taking two blanks, one smaller than the other, and then joining them at the apex to give it thickness and firmness.

In making his paper cups from paper blanks by machinery, the patentee designed to save as much material as possible, and therefore he cut out the blanks of quadrantal shape on the two curved straight edges, and a half-rounded segmental extension or projection, which he partially separated by a cut or slit extending from a straight line 4 (Fig. 2) to the center of arc 2 to simplify the rolling of the blank at one operation, and at the same time obtaining thickness from windings of the blank at the lower end. There is no distinct anticipation. We are not concerned here with a conical cup, as such, rolled or folded, but with a blank for making a cup unknown to the prior art.

There are separate elements of the claims in issue that are found in prior patents. The feature of the semicircular extension, however, partially separated from the blank, was a new element in combination. Defendant, as I understand it, does not contend that the change or alteration over prior blanks is attributable to mere mechanical skill. It is not suggested in any prior patent that a blank could be devised which at a single operation was capable of forming a conical cup with reinforcement at the apex by winding an extension or projection on the blank around it. There are resemblances in the completed cup, and perhaps in the blanks themselves, to prior structures, but the differences in the Curtin blanks, by which the operation of the completed cup is facilitated, are believed substantial.

[2] It is contended that the patent is narrow and that the claims must be strictly construed. This contention simply requires, I think, an examination of the prior Provandie patent, No. 1,124,171, licensed by defendant, which at the trial was treated as the best reference. The cone-shaped cup is formed by Provandie of a segmental blank cut and dent to overlap at the apex, so as to make it water-tight. There is no suggestion of a semicircular extension for stiffening or reinforcing the lower end. It has, however, a piece cut at the lower part extending downwardly; its function being to crimp or tighten the parts at that point to prevent leakage. It is not such an extension as Curtin's, which essentially is an extension of the body of the blank between the adjacent ends of the straight edges and partially separates it from the main blank. The Provandie cup would not be practicable for holding soda water and other soft drinks. It was manufactured for a short period in 1912, but its use was negative, while the Curtin cup, on the other hand, has had enormous sales. The income derived therefrom and from licenses is large, all of which tends to prove that the patent in suit is not devoid of merit, and that doubts, if there are any, as to the validity of the claims, should be resolved in its favor.

Nor can it be said that the changes made by the patentee in cup blanks constituted a mere carrying forward of what had been done or produced before in substantially the same way by equivalents. True, it is a minor invention only, but it attains a new and useful result, and accordingly it is entitled to protection from infringement by a paper blank that includes substantially the same elements in combination and produces substantially the same result. The enormous sales by plaintiff of its paper cup were not due to extensive advertising nor to ordinances requiring hygienic cups as was the case in Individual Drinking Cup Co. v. Errett, 250 Fed. 620, 162 C. C. A. 636, and I think the rule of commercial utility applies.

[3] It is defendant's contention that the reissue is invalid on the ground that it is broader than the original, that it included new matter, and that plaintiff knew of defendant's intention to make conical paper cups, and therefore the belated application for reissue operates to estop proceeding against the defendant. The claims of the original patent were retained in the reissue without change, while the added claims 4 to 9, as heretofore pointed out, were added and are admittedly of narrow scope. The patent Board of Examiners, on appeal from the primary Examiner, decided that the additional claims of the reissue were claims of limitation only, which narrowed the invention, and which were directed to different features already presented in the original patent and claims. This decision by the Patent Office is entitled to great weight, and, though it is not conclusive upon this court, there is nothing shown to indicate that the Board of Examiners erred in their judgment, and hence I conclude as to this that the reissue is valid.

[4] I find, also, that plaintiffs have never acquiesced in the infringing acts of the defendant company, and its status relating to intervening rights has not been changed by the reissue. Nor was there such unreasonable delay in applying for the reissue as to deprive plaintiffs of their remedy against the defendant for infringement. The applica-

tion for reissue was made promptly after learning that the original claims only broadly covered the invention, and that narrower claims would more completely afford protection from infringement. Motion Picture Patents Co. v. Laemmle (D. C.) 214 Fed. 787; Shipman v. Frank (D. C.) 237 Fed. 395; Pelzer v. Meyberg (C. C.) 97 Fed. 969; Steiner & Voegtly Hardware Co. v. Tabor Sash Co. (C. C.) 178 Fed. 831. As said by Judge Hand in Parke-Davis & Co. v. Mulford (C. C.) 189 Fed. 95, affirmed 196 Fed. 496, 116 C. C. A. 262:

"No one can in advance know how far anticipations will go or how little in the end his patent will cover. There is nothing improper, so far as I can see, in * * * putting your claims as broadly as in good faith you can, and then, ex abundanti cautela, following them successively with narrower claims designed to protect you against possible anticipations of which you are not yet aware."

The defense of noninfringement as to the broad claim 3 is based upon the contention that it must be limited to a blank with two straight edges, although in claim 4 the edges are specified as being approximately straight. This claim, however, should not be construed so strictly as to permit an infringement by specious modifications in the configuration of the semicircular extension, or by modifications and changes that do not attain a new result; nor is the defendant relieved by cutting off from the extension a sector, for claim 3 is not in my view limited to a narrow slit or cleft for obtaining partial separation from the blank at one of the straight edges. Claim 4 specifies two approximately straight edges with different angles, and with the radii running to their respective outer ends, while claim 5 particularizes the re-entrant portion, which partially separates the extension piece. Defendant does not avoid infringement by having one straight and another curved edge, nor because it has a modified or extended re-entrant portion. There is in its structure a partial separation of the semicircular extension from the main part of the blank, which functions the same as plaintiff's slit or cleft separation. Claims 6 and 8 refer to different angles of the radii drawn to their respective outer ends in a blank having approximately straight edges and specifying a cleft or re-entrant portion respectively. Claim 7 is limited to two approximately straight edges, one to form the arc of a circle, and with two other edges, one approximately straight, the distance, the claim states, between the latter and the center of the circular edge being less than the distance between said center and the other edge; and in claim 9 two edges are specified making different angles with the radii with their respective outer ends, and points out the manner in which edge *3* (Fig. 2) joins the outer edge of the projection and continues at an acute angle. None of these claims, I find, are broader than the original claim, and for that reason they are not invalid.

Defendant's structure is not differentiated from plaintiff's and is reasonably responsive to the claims. It is urged that the defendant's blank has no approximately straight edges, no re-entrant portion, no cleft or separation of the extension piece, no radical edges nor approximately quadrantal blank. But I do not agree with this view. Like the Curtin cup, defendant's cup is formed by a single operation from a

paper blank of quadrantal form and semicircular extension. · It has two straight edges and one edge forming the 'arc of a circle, while the lower end of the cone is reinforced by winding the extension piece around the main body. As already pointed out, there is no material difference between plaintiff's blank and defendant's, except that a larger part of the extension or projection is cut out, and in doing so the defendant attains the result attained by the slit embodiment in the patent in suit. Its manner of drawing to edge *3* (Exhibit 27) to merge a circular part in the extension part also imparts a reinforcement sufficient to give additional stiffening to the cup. That its paper cup is not waxed, or is only used for drinking water, or is nested with others in a distributing device, and was not expressly designed to hold soda water is not of material importance.

The ·conclusions I have formed render it unnecessary for me to discuss the point of estoppel invoked by plaintiff because of the relationship between the Mr. Moore, of the William A. Rogers Company, Limited, or the latter company and the defendant.

[5] The defense of intervening rights is not established. The relationship between plaintiff and defendant as shown by the proofs, the negotiations between the president of the defendant company, who was also president of the William A. Rogers Company, Limited, a Canadian corporation, the plaintiff, including the close contractual relationship between the Canadian company and plaintiff, substantially negative, it seems to me, any asserted intervening rights before the reissued patent was granted. The admitted manufacture by defendant of paper cups at Buffalo was unknown to plaintiff until about two years after its acts of infringement began. The language of Judge Mayer in Abercrombie & Fitch v. Baldwin (C. C. A.) 228 Fed. 895, quoted by the Supreme Court in affirming his decision (245 U. S. 198, 38 Sup. Ct. 104, 62 L. Ed. 240), may fittingly be applied to this defense. The defendant entered the field with its paper cone cup (Exhibit 5) in 1918. at a time when the validity and scope of the Curtin patent were still unquestioned, and when, after several years of capable effort, the Curtin cone paper cup and the blank from which it was made had created an extensive market. The defendant company took its chances, and, though it is relieved of accountability prior to the reissue, yet, when the reissue was granted, defendant company again took its chances.

In my opinion, the reissue and claims in controversy are valid, and the structure manufactured by the defendant company is an infringement thereof. A decree for plaintiff, with costs.