James F. JONES and Baker-Aldor Jones
Corporation, Plaintiffs,

v.

TUCKER ALUMINUM PRODUCTS OF
MIAMI, INC., and Morton Tucker,
Defendants.

Civ. No. 63–471.

United States District Court
S. D. Florida.

July 24, 1964.

John P. Wetherill, Washington, D. C., Charles E. Buker, Jr., Miami, Fla., for plaintiffs.

William E. Schuyler, Jr., Washington, D. C., Walton, Lantaff, Schroeder, Atkins, Carson & Wahl, by Joseph P. Metzger, Miami, Fla., for defendants.

CHOATE, District Judge.

This is an action for patent infringement brought by plaintiffs for infringement of Claims 1, 2, and 3 of United States Patent No. 3,030,671 issued on April 24, 1961 to plaintiff, James F. Jones, for an invention for Awning-Type Windows and Locking Means Therefor, against defendants, Tucker Aluminum Products of Miami, Inc., and Morton Tucker, based on their manufacture, use, and sale of Awning-Type Windows and Locking Means Therefor in the United States in violation of said patent.

The cause came on for trial before the Court on April 30, 1964, and from the pleadings, exhibits, testimony, stipulation of the parties as well as argument and written briefs of counsel, the Court makes the following.

## FINDINGS OF FACT

1. The plaintiff, James F. Jones, is a citizen of the United States and a resident of Miami Shores, Florida. Plaintiff, Baker-Aldor Jones Corporation, is a corporation of the State of Florida and has its principal place of business at Hialeah, Florida. The defendant, Tucker Aluminum Products of Miami, Inc., is a corporation of the State of Florida having a place of business at Hialeah, Florida. The defendant, Morton Tucker, is a citizen of the United States and resides at Coral Gables, Florida.

2. The subject matter of this law suit may be described by paraphrasing the claims of the Jones patent (No. 3,030,-671). It involves aluminum windows consisting of a frame with one or more vertically swinging vents pivotally mounted to said frame. The vents are actuated up and down by means of the vertical movement of a slide bar and linkage mounted within the sides of the frame to which each vent is pivotally mounted. Said linkage and slide bars are operated by a geared crank. Thus described, the construction is traditional for awning or jalousie type windows. The controversy centers about the locking device which is the novel feature claimed for all of the "inventions" at issue here. This device consists of a cam pivotally mounted on the frame and on a latch bar at the bottom vent. The latch bar, like the slide bar, moves vertically within the frame. A pin on the slide bar linkage actuates the cam imparting vertical movement to the latch bar. Each vent has a pin mounted on the side of its respective frame, and there are cam-like structures termed latches mounted on the latch bar in such position that as the vents are cranked into a closed position the latches are lowered so that their slotted lower surface engages the pin on the vent frame thus locking it. As the vents are opened similar upward movement of the latches frees the pin. There are identical structures on each side of the window. The singular description above being for purposes of convenience.

3. The plaintiffs, Mr. Jones and Baker-Aldor Jones, are not engaged in the manufacture of windows. They are tool and die manufacturers. Among other activities, the plaintiffs were engaged in the manufacture of fabrication dies for various aluminum products manufacturers. According to the testimony, they started to work in 1959 to design a locking device for an awning type window known as the Shores window. Their efforts culminated in working drawings of the window which is the subject matter of the patent in suit by July or August of 1959, and a model was constructed in September of that year. By late 1959 or early 1960, tooling for the patented window was sold by Jones to Permaseal Manufacturing Corporation of New Jersey. Permaseal, in turn, manufactured and marketed at least 15,000 of these windows for each of the years 1960 through 1963. Patent No. 3,030,671 covering this window was issued on April 24, 1961.

4. Defendant, Tucker, entered into design and manufacture of awning windows with a locking device somewhat earlier. It appears that he began to seek a locking device for an awning window while in the employ of Weather Products Company of Miami, Florida in 1956. His efforts culminated in two patents which will be discussed below. However, by December of 1957, he had made up several actual working model windows, as sales and demonstration samples, which employed essentially the same device which Jones was later to patent. One witness said that at least ten of these windows were constructed, and two of them were introduced into evidence as defendants' exhibits, numbers 3 and 13. No. 13 was handmade by Mr. Tucker on December 14, 1957 and No. 3 was made by him on December 16, 1957. The testimony establishes that design drawings of these windows were made as early as August or September of 1957. Tucker did not attempt to patent this design until September, 1962, and that will be discussed subsequently.

5. Tucker proceeded to make additional designs and by April 29, 1958 had constructed a sample or demonstration model of a window which operated substantially the same as the earlier models with the exception of the fact that in place of a separate cam and latch at the lower vent, he was able to combine the functions of the cam and latch into one structure. Subsequently, he made one additional change of design by substituting a metal cam for the nylon cam used on the earlier design. As discussed below both of these structures were subsequently patented by Mr. Tucker. The operation of the metal cam did not differ markedly from that of the nylon cam design and was ultimately adopted to offset the propensity of the nylon to crack in the cold of northern winters.

6. Tucker kept a model of his separate cam and latch window on his business premises together with models of his subsequent design during the entire period covered by this litigation. A separate cam and latch window (defs. exhibit no. 13) was seen as early as late 1957 by Mr. Reggie Ryder, an engineering employee of Jones. Mr. Ryder inspected the model in Tucker's presence and was asked to give a quote on tooling the window. Mr. Ryder testified to this with some particularity. Additionally, a model of the separate cam and latch window together with a model of the combined cam-latch window were delivered to Mr. Rice of H & R Tools of Miami, Florida in April and May of 1958 and Mr. Rice used the models for the fabrication of various handmade parts for the designs.

7. During the same period in May, 1958, Mr. Tucker offered to Mr. Louis Fink, the general manager of Midland Distributors, Inc. of Orlando, Florida, both the window embodying the separate cam and latch concept and the combined cam-latch window. Mr. Fink kept both windows in his sample room in Orlando and ordered manufacture for distribution by his firm of the combined cam-latch window. He did not order the

separate cam and latch window, but kept it in his display room from whence it came to this Court as defendants' exhibit number 3. Further, Mr. Tucker testified that he offered samples of both windows to a Cincinnati distributor, but his testimony in this regard [unlike the remainder] is uncorroborated.

8. Finally, all of the Tucker designs were shown to Mr. Jones, himself, at the Tucker premises which he visited on two separate occasions in the spring and summer of 1959.

9. Tucker received a quick commercial response to his combined cam and latch design, and he tooled up and began manufacture of this design. To the time of trial, Tucker had marketed from one hundred to one hundred and fifty thousand of the nylon cam windows and from two hundred to two hundred fifty thousand of the metal cam windows. The combined nylon cam-latch design was patented on July 7, 1959 as United States patent No. 2,893,728. The metal cam design was patented on August 30, 1960 as United States patent No. 2,950,510.

10. In April of 1961, the defendants purchased a Permaseal window being made under the Jones patent, and Tucker recognized the art as that which he had first designed in late 1957. Whereupon, in May, 1961, he wrote a notice of infringement of patent No. 2,950,510 to Permaseal. Thereafter, starting in February, 1962, Tucker manufactured and sold approximately 75,000 windows of essentially the same design as that covered by the Jones patent. Tucker marketed these windows as a price competitor apparently selling them for about two thirds of his price on those windows covered by his patents.

11. In September, 1962, Tucker filed application for a patent of this separate cam and latch design and asked that the Patent Office declare an interference between his application and the Jones patent. On June 6, 1963, the Patent Office declared "interference," and asked the parties for preliminary statements. However, during the motion period, Tucker filed a formal abandonment of his application (February 11, 1964). The complaint, herein, was filed on August 17, 1963, and such abandonment was, therefore, subsequent to the filing of this suit and only shortly prior to the trial of this cause.

12. There was no testimony to establish the fact that Jones, himself, made any conceptual or physical contribution to the design of the window which was patented in his name. On the contrary, the testimony clearly showed that employees of Jones, namely Benson and Kushner did the initial design work with Benson being responsible for any inventiveness involved. Construing the testimony most favorably to the plaintiffs, it was established only that Jones told his assigned employees that he wanted an improved locking window, and pushed them to design one.

13. It was made obvious to the Court that the only difference between the Tucker patented design and the design of the Jones patent is that the Jones design (like the early Tucker) utilizes separate cam and latches. This permits the latches to be slotted so that the pin may extend completely through the latch as opposed to Tucker's combined cam-latch design which has a groove on the side to receive the pin. Tucker claims that his design is superior because the single cam and latch permits installation at a point low on the vent which makes it much more difficult to force the vent open. The high mounting necessitated by the Jones design permits the lower edge of the vent to be pulled up. Tucker also claims superiority for his patented design by virtue of its adaptation to narrow vents which do not allow room for the Jones installation, and also claims a lower manufacturing cost. On the other hand there was testimony that the Jones design was superior by virtue of the fact that the Tucker window required closer tolerance in installation in order to prevent malfunction. The defendant adduced testimony that the Jones device as a step backward in the art from that disclosed by the Tucker patents. Without attempting to resolve

the conflict of testimony in this regard, the Court finds that once the Tucker patented design was made known, the Jones design was a mere mechanical change of structure which difference was one which would have been obvious to a person having ordinary skill in the art.

## CONCLUSIONS OF LAW

The Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1338. Venue is established under 28 U.S.C. §§ 1391 and 1400(b).

The parties stipulated that the issues of law were infringement, validity and enforceability. As will appear from the foregoing statement of facts, it appears that infringement was probably established. Nonetheless, in view of the Court's conclusions on the question of validity, it is not necessary to enter into discussion of either infringement or enforceability.

■■■ The defendant claims that the Jones patent was invalid because: (a) Tucker was the prior inventor; (b) Jones obtained his design from Tucker; (c) the art disclosed by the Jones patent was not produced by Jones but by one of his employees; and (d) the claims of the Jones patent were an obvious modification of the Tucker patents and represented a step backwards in the art. It is the opinion of the Court that the Defendant is entitled to prevail on these defenses of validity. We agree that the Defendants must carry the burden of proving invalidity beyond a reasonable doubt. Mumm v. Jacob E. Decker & Sons, 301 U.S. 168, 171, 57 S.Ct. 675, 81 L.Ed. 983 (1937). 35 U.S.C. § 282 provides that the patent carries a presumption of validity. Although the plaintiffs rely upon the failure of the defense to carry the burden of proof, it appeared to the Court, as it heard the witnesses and viewed the exhibits, that the testimony overwhelmingly favored the defendants' version of the case on validity. It should be noted in this connection that plaintiff, Jones, did not appear for the trial. His counsel submitted a medical report indicating that Jones had had a heart attack in 1956 and that when his deposition was taken in November, 1963, some five months prior to trial, he suffered a minor heart flare-up due to the emotional stress engendered thereby. Nothing further was submitted to the Court to indicate that Jones was unable to attend at the time of trial.

It is to be noted that Mr. Jones was not listed as a witness for the plaintiff in the pretrial stipulation.

As will appear hereafter, the defendants carried the burden of going forward with proof sufficient to establish the invalidity of the Jones patent and did overcome the presumption of validity provided by statute. The burden of going forward shifted, therefore, back to the plaintiffs, but they had nothing to offer other than the valiant but ineffectual attempt of plaintiffs' brief to demonstrate that the defendants' witnesses should not be believed. Jones' absence seems of some significance in this context as he was the one witness who might conceivably have offered adequate rebuttal to the defendants' overwhelming weight of testimony. Although Jones' deposition was not admitted and was not considered in this opinion, it is on file in this cause, and a brief perusal thereof may explain Jones' personal absence from the trial.

Under normal circumstances the Court would not have seen fit to discuss the testimony at such great length as herein. However, the main thrust of the plaintiffs' brief is directed at the alleged failure of the defendants to carry their burden of proof, and the Court is also mindful of the continuing admonitions of the appellate court urging that the "badge of personal analysis" appear in the Findings in the trial court. Louis Dreyfus & Cie v. Panama Canal Co., 298 F.2d 733, 738 (5th Cir. 1962); and see, Italit, Inc. v. Johns-Mansville Corp., 331 F.2d 663 (5th Cir. 1964); Kinnear-Weed Corp. v. Humble Oil & Refining Co., 259 F.2d 398 (5th Cir. 1958). We turn, therefore, to analysis of the various claims of invalidity.

(a) Tucker, the prior inventor.

Witnesses, Andre, Wilder, Tucker, Fink, Rice and Ryder all testified to the fact that Tucker had designed and made up several working models of the separate cam and latch design in late 1957 or early 1958. The drawings and the exhibits demonstrating the design were dated and the times of completion were precisely established. In rebuttal the plaintiffs offer only the argument that Tucker should not be believed even though his testimony in the main was supported at every point by one or more additional witnesses.

Plaintiffs' counsel seem to recognize the weakness of their position in this regard because they offer the legal counter of abandonment on the part of Tucker. The argument of abandonment is necessarily predicated on an admission of prior invention by Tucker. Relying on 35 U.S. C. § 102, the plaintiffs' main brief states that:

"A person shall be entitled to a patent unless—

"(g) before the applicant's invention thereof the invention was made in this country by another who had not abandoned, suppressed, or concealed it. * * *"

■ Although the evidence contains some inference of abandonment there was certainly no direct testimony as such. The evidence is more susceptible of being construed as a mere delay on Tucker's part in seeking commercial exploitation of this design since he did not find immediate commercial success for it and had quick success with his later invention. Commercial exploitation is not necessary to support a finding of reduction to practice. Corona Cord Tire Co. v. Dovan Chemical Corp., 276 U.S. 358, 384, 48 S.Ct. 380, 72 L.Ed. 610 (1928); Walker on Patents (Deller Edition) Vol. 1, sec. 103, page 385.

■ Moreover, the conditions of 35 U.S.C. § 102 are considerably more demanding than the plaintiffs' limited reference to subparagraph (g) would indicate. Thus, subparagraph (a) reads:

"A person shall be entitled to a patent unless—

"(a) the invention was known or used by others in this country, or. * * *"

Subparagraph (b) states:

"A person shall be entitled to a patent unless—

"(b) the invention was * * * or in public use or on sale in this country, more than one year prior to the date of the application for a patent. * * *"

It will be noted that the various requirements of Section 102 are written in the disjunctive and each condition thereof must be met in order to entitle one to a patent.

The testimony established beyond doubt that the early Tucker design of a separate cam and latch arrangement was not suppressed or concealed. It was "publicly" known and available to those in the trade. One was on display in Fink's display room for solicitation of orders from the trade. One was on display in Tucker's plant and was shown or seen by numerous parties associated with the awning window business including the alleged inventor, Mr. Jones. The Court can only conclude that the invention was "publicly" known by others in the trade. It was certainly for sale. Tucker's solicitation of Fink was fully corroborated and at least one other solicitation was testified to by Mr. Tucker.

The plaintiffs rely strongly on the case of Lyon v. Bausch and Lomb Co., 224 F. 2d 530 (2nd Cir. 1955), cert. denied, 350 U.S. 911, 76 S.Ct. 193, 100 L.Ed. 799 (1956). At first blush this case would appear to have close analogy to the case at hand. But examination of the report discloses that the prior discoverer of the process at issue was engaged in the art involved on a part-time basis only, and although he disclosed the very technical process to three individuals, one such disclosure was by letter to a physics instructor, another was by word of mouth to a commercial physicist, and the other disclosure was to a student employee whom

the inventor swore to secrecy. Cartwright's use of the process in coating some lens which were sold did not of course disclose anything about the process itself. This was a far different situation from the public display of various samples from which by observation even a layman of slight mechanical bent could determine the method and design of operation. It is a far cry from the open discussion of working samples by various representatives of window manufacturers, wholesalers, and representatives of tool and die shops serving the industry.

(b) Jones obtained his design from Tucker.

and/or

(c) The art disclosed by the Jones patent was produced by one of his employees.

The defendants offered corroborated testimony convincing the Court that Jones obtained the design appearing in his patent from Tucker's early work. The plaintiffs only reply to this testimony is that the Court should not believe it. The Court is satisfied that Jones did obtain the concept of this design from Tucker, but is uncertain as to whether or not the proof of same meets the standard of "beyond a reasonable doubt."

The Court is of the firm opinion that the defendant did prove beyond a "reasonable doubt" that one of two alternatives is true. There is literally no doubt in the Court's mind that: Either (1) Jones' contribution, if any, to the design of the invention which was patented in his name was derived by him from the Tucker windows; or (2) Jones made no conceptual contribution and the design originated primarily with Benson's work and was not possible without the art disclosed by Tucker's patents.

Benson clearly testified that Jones made no suggestions as to solving their problem. Mr. Kushner who testified ostensibly in rebuttal for the plaintiffs attributed supervision to Mr. Jones, but stated that the information leading to the splitting of the cam and latch came from Benson. Kushner also indicated that the direct supervision of the department was in care of Mr. Ryder who freely testified to his familiarity with the Tucker designs.

(d) The claims of the Jones patent were obvious to one of ordinary skill in the art.

The Court finds inescapable the conclusion that once the Tucker invention, *i. e.*, the concept of a latch bar activated by a cam which in turn is activated by a pin on the slide bar linkage, became publicly known; that the design of the Jones patent did not embody any new operative concept and such mechanical difference as was demonstrated would have been obvious at the time of such design to a person having ordinary skill in the art of awning windows.

The Court concludes that the Jones patent, No. 3,030,671, is invalid under the various provisions of Title 35 U.S.C., namely, Section 102, subsections (a), (b), and (f) and Section 103.

Judgment will be entered in accordance with this decision for the defendants, and counsel shall submit form of judgment. The Court does not regard this case as "exceptional" within the purview of 35 U.S.C. § 285, and the prevailing parties' plea for attorneys' fees is hereby denied.