**CHAS. PFIZER & CO., Inc., Plaintiff,**

v.

**BARRY–MARTIN PHARMACEUTICALS, INC., a Florida corporation, Defendant.**

**Civ. No. 64–175.**

United States District Court
S. D. Florida.
March 18, 1965.

---

Ralph & Karcher, Richard Ralph, Miami, Fla., and Connolly, Bove & Lodge, Arthur Connolly, Wilmington, Del., for plaintiff.

Bernard Weksler, Miami, Fla., and A. J. Nydick, New York City, for defendant.

CHOATE, District Judge.

This action, tried before the Court without a jury, is for patent infringement. The Court having considered the pleadings, evidence, and briefs of the parties makes the following:

### FINDINGS OF FACT

1. Plaintiff, Chas. Pfizer & Co., Inc. is a corporation of the State of Delaware, with its principal place of business in New York City, New York.

2. Defendant, Barry-Martin Pharmaceuticals, Inc. is a corporation of the State of Florida, with its principal place of business in Miami, Florida.

3. Plaintiff is the owner of U. S. Patent No. 2,699,054 entitled "Tetracycline."

4. Tetracycline is a broad spectrum antibiotic first discovered in June, 1952 by Dr. Lloyd H. Conover a research chemist employed by plaintiff. Dr. Conover was engaged in an investigation of the atomic structure of two other antibiotics, Aureomycin and Terramycin when he postulated a theory for synthesizing a compound from Aureomycin which would retain the therapeutic qualities of Aureomycin while reducing or eliminating the defects of the old drug. The success of the structure research group in determining the atomic structure of Aureomycin was a great aid to Dr. Conover but did not, as contended by the defendant, make his discovery obvious. Further, the structure work was done by the patentee, who spent many thousands of dollars and employed ten Doctors of Chemistry and supporting personnel in an investigation leading to the finding of the atomic structure of Aureomycin. If the atomic structure investigation did contribute to the patent it was only a step in the direction of the final discovery by the patentee. However, as testified to by Dr. Conover, the discovery of new antibiotics was not the planned purpose of the structure group which merely sought general information which might lead to other discoveries or aid them.

5. The Conover theory involved the catalytic hydrogenation of Aureomycin to remove the chlorine substituent at the 7-position of the Aureomycin molecule, carrying out the reaction in an alkali free medium since Aureomycin is unstable in alkali.

6. The other members of the structure research team including Dr. Robert B. Woodward, Professor of Chemistry at Harvard University were extremely skeptical about Dr. Conover's proposal but he proceeded nevertheless.

7. Dr. Conover conducted his first experiment on June 27, 1952 by subjecting Aureomycin to a mild catalytic hydrogenation in the absence of alkali. The resulting product was the desired tetracycline (then called deschloroaureomycin). Additional tests were conducted to

confirm the success of the experiment and the antibiotic activity of the new compound.

8. Conover's discovery, both process and product, had two main facets: (1) the discovery that Aureomycin, which is unstable in alkali, could be subjected to a catalytic hydrogenation to remove the chlorine substituent to produce a product which was stable in alkali and (2) that the resulting product retained and improved the favorable antibiotic properties of Aureomycin and significantly lowered the deleterious side effects of Aureomycin.

9. A patent application for deschloroaureomycin, its salts and the process for their production was filed on October 23, 1952. The application referred to the new product as deschloroaureomycin since the name "tetracycline" had not yet been adopted.

10. The Patent Office rejected the product claims of the October 23, 1952 application on various grounds and on October 9, 1953 a continuation application was filed, substantially the same as the first application but referring to the product as "tetracycline." The rejection of the product claims were withdrawn by the Patent Examiner, and the patent issued.

11. The continuation application No. 385,041 became involved in two interferences. The first, by American Cyanamid Company involving tetracycline and the process for its production was settled in favor of the Conover application by agreement between the parties dated January 11, 1954.

12. On March 2, 1954 a second interference with the Conover continuation application was declared with application of Heinemann, et al and Minieri, involving one of the salts of tetracycline involved in the Conover application, to-wit: tetracycline hydrochloride. As applicable to the Conover application, the interferences involved the possibility that tetracycline, in substantial and recoverable amounts, might have been produced by repeating certain examples in the prior art Duggar and Niedercorn processes for the production of Aureomycin.

13. By early 1954 it was well known within the scientific community that insignificant amounts of tetracycline were co-produced with Aureomycin produced by a fermentation process utilizing the *S. auerofaciens* micro-organism. Several patent applications filed after the Conover application disclosing this fact were pending before the same Patent Examiner as the Conover application.

14. At the request of the Patent Office, plaintiff's scientists conducted experiments to determine if recoverable amounts of tetracycline as set forth in the Minieri et al application could be produced by certain prior art fermentation procedures. These experiments, conducted by Doctors Tanner and Bogert, were fairly and accurately conducted and described in affidavits filed in the Patent Office December 8 and 9, 1954. These experiments established that the prior art fermentation procedures did not produce the recoverable amounts of tetracycline in which the Examiner was interested, but only trace amounts of no practical significance. Thereafter the patent in question was issued.

15. There is no evidence that tetracycline has ever been recovered, produced, isolated or even identified other than in a laboratory. The defendant witness, Dr. Wallis, testified that tetracycline, Aureomycin and terramycin, if produced naturally, would decompose within minutes due to their sensitivity to alkali.

16. The discovery of tetracycline by Dr. Conover was, as described by Dr. Wallis, a "marvelous" and "great" discovery. This discovery, which was most unobvious and involved scientific imagination, perseverence and skill, has been of unquestioned benefit to mankind. Tetracycline is now considered the best of the broad spectrum antibiotics and has largely replaced Aureomycin due primarily to a much lower incidence of toxic side effects in its use.

17. The defendant has been selling tetracycline products, including tetracyc-

line hydrochloride in this District and the southeast United States since December, 1963.

18. The tetracycline sold by defendant is made in Italy and is not manufactured by plaintiff or any of its licensees under the patent in suit. The defendant purchases almost all of the tetracycline products from the Continental Vitamin Corporation, the importer of the tetracycline products. The Italian product came into manufacture long after the Conover patent.

19. Defendant knew of the plaintiff's patent before it began to deal in the imported tetracycline products. The defendant has an agreement for indemnification for any liability arising from patent infringement with its supplier, Continental Vitamin Corporation, who has assumed the defense of the present action.

20. Plaintiff has been substantially damaged by defendant's sales of tetracycline and by its activities in inducing others to sell or use such products.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of the parties and of the subject matter.

■ ■ 2. The patent in suit is presumed to be valid and defendant must carry the burden of proving invalidity (35 U.S.C. § 282); Hahn & Clay v. A. O. Smith Corporation, 320 F.2d 166, 176 (5 Cir., 1963); Jones v. Tucker Aluminum Products of Miami, Inc., 233 F.Supp. 403 (S.D.Fla.1964); Ibis Enterprises, Limited v. Spray-Bilt, Inc., 220 F.Supp. 65 (S.D.Fla.1963); Johns-Manville Corporation v. Italit, Inc., 209 F.Supp. 798 (S.D.Fla.1962). The presumption of validity is strengthened when the Patent Office has considered and distinguished the prior art relied on as anticipation. Murray Company of Texas, Inc. v. Continental Gin Co., 264 F.2d 65, 69 (5 Cir., 1959); Johns-Manville Corporation v. Italit, Inc., supra.

■ 3. The defendant has not sustained the burden of proof necessary to overturn the presumption of validity attaching to the patent from its grant or the administrative determination of patentability made by the Patent Office in granting the patent.

■ 4. Since the prior art Aureomycin fermentation broths and antibiotics contained insufficient tetracycline to be of any benefit to mankind, they do not as a matter of law negate the validity of Conover's patent claims. Merck & Co. v. Olin Mathieson Chemical Corporation, 253 F.2d 156 (4 Cir., 1958); Parke-Davis & Co. v. H. K. Mulford Co., 189 F. 95 (S.D.N.Y. 1911), aff'd 196 F. 496 (2 Cir., 1912); Kuehmsted v. Farbenfabriken of Elberfeld Co., 179 F. 701 (7 Cir., 1910).

■ 5. The Conover patent in suit, No. 2,699,054, was duly and legally issued to plaintiff by the United States Patent Office after a careful examination of all relevant facts bearing on patentability. Plaintiff has owned said patent continuously since it was issued on January 11, 1955. It is good and valid in law, and its claims clearly define a patentable invention of great importance in the medical field. (35 U.S.C. § 112)

■ 6. No evidence to sustain the defendant's contention that tetracycline is a natural product was produced. The prior existence of tetracycline in Aureomycin in trace amounts, unrecognized and of no use does not invalidate the patent. Kuehmsted v. Farbenfabriken of Elberfeld Co., 179 F. 701 (7th Cir., 1910); Parke-Davis & Co. v. H. K. Mulford Co., 189 F. 95 (S.D.N.Y., 1911); aff'd 196 F. 496 (2nd Cir., 1912); Merck & Co. v. Olin Mathieson Chemical Corporation, 253 F.2d 156 (4th Cir., 1958).

7. Defendant has infringed claims 1, 2, 3, 6, 13, 15 and 16 of the patent in suit by its sales of tetracycline products including tetracycline hydrochloride capsules and syrup and by actively inducing others to infringe said patent.

8. Plaintiff is entitled to recover all its damages from defendant's infringement of the patent in suit.

9. Plaintiff is entitled to recover from defendant its reasonable attorney's fees and the costs of this action.

10. Defendant and all those in privity with it shall be enjoined from all further infringement of the patent in suit.

11. Defendant's counterclaim as to all counts is without merit and shall be dismissed with prejudice.

12. Counsel for the plaintiff shall submit an order in accordance with these findings.