CHAS. PFIZER & CO., Inc., a Delaware corporation, Plaintiff-Appellee,

v.

DAVIS–EDWARDS PHARMACAL CORPORATION, a New York corporation, Defendant-Appellant.

Nos. 80, 81, 82, Dockets 31294, 31295, 31296.

United States Court of Appeals
Second Circuit.

Argued Oct. 9, 1967.

Decided Nov. 20, 1967.

---

Mark H. Berger, New York City (Sorkin & Berger, New York City, on the brief), for defendant-appellant.

Thomas S. Lodge, Wilmington, Del. (Connolly, Bove & Lodge, Arthur G. Connolly, Arthur G. Connolly, Jr., Wilmington, Del., Dewey, Ballantine, Bushby, Palmer & Wood, New York City, on the brief), for plaintiff-appellee.

Before LUMBARD, Chief Judge, SMITH and FEINBERG, Circuit Judges.

FEINBERG, Circuit Judge:

This is an appeal from an order of the United States District Court for the Southern District of New York, Sylvester J. Ryan, J., 267 F.Supp. 42, finding appellant Davis-Edwards Pharmacal Corporation in contempt for not complying with a final judgment of that court entered by consent on May 19, 1965. Appellant asks us to reverse the order because the underlying 1965 consent judgment should not be enforced and because, in any event, no violation of its terms was proven. We affirm.

To understand the issues on appeal, two separate proceedings must be kept in mind, one begun in the Southern District and the other before the Federal Trade Commission. Both grow out of the issuance to appellee Chas. Pfizer & Co., Inc. of patent No. 2,699,054 in January 1955 for the broad-spectrum drug tetracycline. In 1958, the Commission charged that Pfizer had made false and misleading statements to the Patent Office to induce the issuance of the patent. In 1961, a Commission hearing examiner recommended dismissal of the complaint; the full Commission overruled this finding in 1963 and found that Pfizer and another drug company had obtained the patent for Pfizer by fraud and misrepresentation. Thereafter, Pfizer, along with other drug companies, appealed from the Commission's order to the

Court of Appeals for the Sixth Circuit. In June 1966, that court reversed the Commission for reasons discussed below.

It was in the period from the Commission order in 1963 to the Sixth Circuit opinion in 1966 that the crucial events in the Southern District litigation occurred. In November 1963, Pfizer brought a patent infringement suit in that court against Davis-Edwards. The latter's answer, filed in January 1964, denied the validity of the patent and alleged that it had been obtained by fraud and misrepresentation and by a conspiracy illegal under the antitrust laws; these charges were also the basis of a counterclaim by Davis-Edwards seeking damages. Meanwhile, in March 1965, a federal district court in Florida held the patent valid and infringed in one of the many suits Pfizer had brought against alleged infringers. Chas. Pfizer & Co. v. Barry-Martin Pharmaceuticals, Inc., 241 F.Supp. 191 (S.D.Fla.1965). Apparently strongly motivated by this ruling,[1] Davis-Edwards agreed to settle Pfizer's suit against it at a time when Pfizer's appeal from the Commission order was still pending in the Sixth Circuit. This resulted in the 1965 final judgment, which provided, among other things, that as between the parties the patent was valid, that Davis-Edwards had infringed, that it was enjoined from directly or indirectly infringing the patent, and that its counterclaim was dismissed with prejudice. The judgment was entered upon consent and was submitted to Judge Harold R. Tyler, Jr., who signed it on May 19, 1965.

Thereafter, the next significant event for our purposes took place in June 1966 when the Court of Appeals for the Sixth Circuit reversed the Commission. It held that the Commission's finding that Pfizer had committed fraud on the Patent Office was not supported by substantial evidence and that the Commission's order was also invalid because the Commission chairman should have disqualified himself. American Cyanamid

Co. v. FTC, 363 F.2d 757 (6th Cir. 1966). The court remanded the case to the Commission to take testimony from a patent examiner concerning whether he had been misled into granting the patent. On remand, the patent examiner testified in September 1966 that he would not have granted the patent if he had been informed about certain pertinent facts; in November 1966, the Commission examiner hearing the case found that fraud had been committed on the Patent Office.

At this point, before the full Commission had acted upon the hearing examiner's decision, Davis-Edwards resorted to self-help to obtain relief from the 1965 consent judgment. According to the facts found by Judge Ryan: In late December 1966, Davis-Edwards told Pfizer that it had committed itself to import 10,000 kilograms of tetracycline from an unlicensed source and to sell it; Davis-Edwards asked Pfizer for a license to do so but stated that, in any event, it intended to go ahead. Pfizer refused the license and threatened to institute contempt proceedings. In January 1967, Pfizer brought on these proceedings; a week later Davis-Edwards moved to vacate the 1965 consent judgment. Both motions were heard by Judge Ryan, who granted Pfizer's and denied appellant's. The judge held that Davis-Edwards was well aware of the Federal Trade Commission proceedings and the facts on which it was based at the time appellant entered into the 1965 consent judgment, that there was no final decision as yet in the Commission proceedings, and that Davis-Edwards made its motion to vacate the 1965 judgment only because Pfizer would not permit it to "disregard its agreement and the order of the Court." Judge Ryan concluded that Davis-Edwards:

> has urged no ground for the vacating of the judgment; no fraud was practiced upon it in arriving at the underlying settlement agreement and there was certainly no innocent ignorance of facts on its part which might in any

1. Appellant's Appendix, 33a–34a.

way persuade a Court that in equity defendant should be relieved of the obligations it freely entered into in the exercise of its business judgment.

Finding that Davis-Edwards's actions amounted to a civil contempt of the prior order, the judge directed appellant to comply with that order. He imposed no fine for prior violations because "none have been proved," but provided that Davis-Edwards would be "liable to a fine of $5,000 for any future violation of the order." Appellant was also assessed $500 as reimbursement to Pfizer for costs and counsel fees on the motion.

To bring the parallel proceedings completely up to date, Davis-Edwards apparently did not proceed to sell tetracycline. Instead, represented by new counsel, it appealed the contempt order to this court. Shortly before argument before us, the full Commission affirmed its hearing examiner and again found that Pfizer had made misrepresentations to the Patent Office. 3 CCH Trade Reg. Rep. ¶ 18,077 (Sept. 29, 1967). Presumably, Pfizer will again appeal to the Court of Appeals at the appropriate time.

Although the facts are complicated, the issue before us is simple: Did Judge Ryan on the record before him commit error in refusing to vacate the 1965 consent judgment and in holding Davis-Edwards in contempt? Appellant argues that he did because the 1965 judgment was a fraud on the court, because it is no longer equitable for that judgment to have prospective application and because, in any event, no violation of the judgment was proved.

Appellant's first argument invokes Fed.R.Civ.P. 60(b) (6), and relies upon Hazel-Atlas Glass Co. v. Hartford Empire Co., 322 U.S. 238, 64 S.Ct. 997, 88 L.Ed. 1250 (1944). Rule 60(b) provides:

On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: * * * (3) fraud (whether heretofore denominated intrinsic or extrinsic), mis-representation, or other misconduct of an adverse party; * * * or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. * * * This rule does not limit the power of a court to entertain an independent action * * to set aside a judgment for fraud upon the court. * * *

The significant part of this language was inserted into the civil rules in 1946 to make fraud an express ground for relief by motion. The note of the Advisory Committee specifically referred to the *Hazel-Atlas* case as an example of relief for fraud upon the court. Appellant's difficulty is not that the rule fails to cover that concept; it is instead that the argument it now makes was not made to Judge Ryan and that, even if it had been, the argument would have been a weak one upon the record before the judge. As far as we can tell from the papers filed with Judge Ryan, the point that there had been fraud upon Judge Tyler when he signed the consent judgment was not pressed; in fact, the *Hazel-Atlas* case was apparently not even mentioned to Judge Ryan. Instead, appellant's arguments to Judge Ryan were all designed to show that it would be inequitable to continue to enforce the 1965 judgment because of events that had transpired since its entry, an argument which we consider further below.

However, we do not rest our decision on the failure to raise the point in the district court, since in any case there was no fraud on the court here within the meaning of *Hazel-Atlas*. That case grew out of an article in a trade journal, apparently by the president of a labor union active in the industry, extolling the merits of a new device. The article had actually been written by officials and attorneys of Hartford Empire Co., the applicant for a patent, to delude the Patent Office. The patent issued, and thereafter Hartford sued Hazel-Atlas

Glass Co. for patent infringement. Hartford lost in the district court but was successful in the Court of Appeals for the Third Circuit. On appeal in that court, the attorneys for Hartford called attention to the article; the circuit court gave considerable weight to it in reversing and holding the patent valid and infringed. Twelve years later, when all the facts were known, the Supreme Court held that the judgment could not stand in the face of this fraud upon the circuit court.

■ This case is far different from *Hazel-Atlas*. The circuit court there had no way of knowing that the article it relied upon by an "ostensibly disinterested expert" was, in fact, written and planted by one of the parties to the case. In addition, when the Supreme Court set aside the prior judgment the facts concerning the fraud were undisputed. In contrast, when Judge Tyler signed the consent judgment in this case in May 1965, the entire file was before him. This included Davis-Edwards's answer and counterclaim and affidavits filed in connection with various procedural skirmishes; these charged Pfizer with having obtained its patent by misrepresentation and specifically referred to the decision of the Federal Trade Commission supporting this allegation. Therefore, the court was presumably aware of this element of the case when the consent judgment was approved. Moreover, Pfizer does not admit that the charge of misrepresentation in obtaining its patent is well founded. This point has been vigorously disputed by Pfizer since 1958 before the Commission and in court and was one of the key issues which Pfizer and Davis-Edwards adjusted between themselves by negotiating a settlement. We do not imply at all that the latest Commission ruling is incorrect; we only point out that the alleged fraud is still in dispute. Accordingly, although we take a charge of fraud upon the district court seriously,[2] appellant's

argument that it occurred in this case is not persuasive.

■ Appellant's second point is based upon Fed.R.Civ.P. 60(b) (5), which provides that a court may relieve a party from a final judgment if "it is no longer equitable that the judgment should have prospective application." Davis-Edwards argues that Judge Ryan should have relieved it from the 1965 judgment because one of the alleged conditions of the settlement was Pfizer's oral promise, which Davis-Edwards claims was broken, that no competitor of Davis-Edwards would receive a better settlement. Unlike the fraud on the court argument, this point was made to Judge Ryan. However, Pfizer sharply contested it, categorically denying that any such assurance was given. Pfizer pointed out that the terms of the settlement between it and Davis-Edwards were carefully reduced to writing and that, had there been such an oral agreement, Davis-Edwards would undoubtedly have insisted that it also be written. Judge Ryan did not specifically deal with the issue but did find, as noted above, that "no fraud was practiced upon" Davis-Edwards "in arriving at the underlying settlement agreement" and that he saw no reason to relieve it "of the obligations it freely entered into in the exercise of its business judgment." We are not persuaded that on the narrow issue now posed, this decision was an abuse of discretion. Cf. *Westerly Electronics Corp. v. Walter Kidde & Co.*, 367 F.2d 269 (2d Cir. 1966); *West v. Gilbert*, 361 F.2d 314 (2d Cir.), cert. denied, 385 U.S. 919, 87 S.Ct. 229, 17 L.Ed.2d 143 (1966).

■ Appellant's final argument is that no violation of the 1965 order was proved. Apparently its premise is that the court should have waited until appellant actually sold the large quantity of unlicensed tetracycline it had already arranged to import and sell. We think that on these facts its position is incorrect. In the face of appellant's actions

---

2. See 7 Moore, Federal Practice ¶ 60.33 at 504–13 (1966) for other examples of fraud upon the court.

and its threats to Pfizer, there was no reason for Judge Ryan to wait until the last step was taken. Because it was not, Davis-Edwards has not yet been required to pay any fine, although it has been adjudged in civil contempt; it is on notice that if it proceeds with its improper plans to ignore the consent judgment, it will be liable to a fine of $5,000 for each violation. This disposition of the matter makes good sense. See Sunbeam Corp. v. Golden Rule Appliance Co., 252 F.2d 467 (2d Cir. 1958). The requirement that appellant pay $500 to Pfizer as reimbursement for costs and counsel fees on the motion was entirely appropriate. Id.

Accordingly, the judgment of the court below will be affirmed. However, the present posture of the case as it now comes before us should be noted. The full Commission, since Judge Ryan's decision nine months ago, has for the second time found that Pfizer misled the Patent Office. We do not know how much time will elapse in the course of appellate review, which we assume will be sought, or what the ultimate result will be. Moreover, criminal antitrust charges, which were first brought in 1961 against Pfizer and two other drug companies involving the tetracycline patent, see United States v. Chas. Pfizer & Co., 205 F.Supp. 94 (S.D.N.Y.1962), have now come to trial in the Southern District.[3] In addition, developments in proceedings in other courts may be significant. Cf. McKesson and Robbins, Inc. v. Chas. Pfizer & Co., 235 F.Supp. 743 (E.D.Pa.1964); see American Cyanamid Co. v. FTC, 363 F.2d 757, 817 (6th Cir. 1966) (listing 36 infringement suits by Pfizer). We are aware of the practical inadequacy of existing remedies for improperly procured patents. See Note, Improperly Procured Patents: FTC Jurisdiction and Remedial Power, 77 Harv.L.Rev. 1505 (1964). Moreover, "There are issues of great moment to the public in a patent suit." See *Hazel-Atlas*, 322 U.S. at 246, 64 S.Ct. at 1001. Therefore, we take pains to point out that

our decision here is without prejudice to another application to the district court for relief under Fed.R.Civ.P. 60(b) (5) or (6) based upon new or further documented reasons why it would no longer be "equitable that the [1965] judgment should have prospective application," or "relief from the operation of the judgment" would be justified. We do not suggest a further attempt at self-help by Davis-Edwards at any time, but only make clear that the door is open to it to file a new petition at an appropriate time.

Judgment affirmed.

---

3. We, of course, pass no comment on the issues there raised.